1
2
3
MARKUS W. LOUVIER, #39319
STEPHANIE A. CROCKETT #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com
*Attorneys for Defendant*

4
5
6
7
8
9

10
11
IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

12
13
14
SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,

15
*Plaintiffs,*

16
17
v.

18
ULTA BEAUTY, INC.,

19
20
*Defendant.*

Cause No.

Spokane County Superior Court Case No. 25-2-03149-32

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT [28. U.S.C. §§ 1332(a), 1441, 1446, and 1453]**

21
22
23
24
25
26
27
28
29
30
NOTICE OF REMOVAL - page 1



## I.  <u>NOTICE OF REMOVAL</u>

Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta Salon"), together with its incorrectly sued parent Ulta Beauty, Inc.[1] ("Ulta Beauty"), hereby removes the subject action from the Superior Court of the State of Washington in Spokane County to the United States District Court for the Eastern District of Washington. The state court action being removed is captioned Selay Shahpur and Lindsey Smith, on their own behalf and on behalf of others similarly situated, Plaintiffs v. Ulta Beauty, Inc., Defendant. The state court action si filed under Spokane County Superior Court Cause No. 25-2-03149-32.

There are two independent grounds for removal. First, diversity jurisdiction exists under 28 U.S.C. § 1332 – there is complete diversity between the parties, and the amount in controversy exceeds $75,000 for each named Plaintiff, exclusive of interest and costs. Second, removal is proper under 28 U.S.C. §§ 1441, 1446, and 1453 pursuant to the Class Action Fairness Act ("CAFA"). There is complete diversity, the proposed class has more than 100 members, and the

---

[1] Ulta Salon, which is a subsidiary of Ulta Beauty, is the correct Defendant here. As used in this pleading, "Ulta" refers to Ulta Salon and Ulta Beauty collectively.

NOTICE OF REMOVAL - page 2

amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs.

Ulta denies Plaintiffs' allegations and their requested relief. Ulta further preserves any and all defenses, exceptions, or obligations that may exist in its favor. Should Plaintiffs challenge Ulta's removal, it will provide additional evidence to support the allegations of this pleading, if appropriate.

## II.     PROCEDURAL BACKGROUND

1.     On June 26, 2025, Plaintiffs Selay Shahpur and Lindsey Smith ("Plaintiffs") filed a Complaint in the Superior Court of the State of Washington in Spokane County (the "Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.     On July 9, 2025, Plaintiffs attempted to serve copies of the Summons and Complaint on the purported registered agent for Ulta Beauty, an entity that is not registered to conduct business in Washington state and has no registered agent in this state. True and correct copies of these documents are attached hereto as **Exhibit B**.

3.     On July 14, 2025, Ulta Beauty's purported agent, CSC, rejected service, explaining that Ulta Beauty is not registered to conduct business in the

NOTICE OF REMOVAL - page 3

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

state of Washington.  A true and correct copy of the rejection is attached hereto as **Exhibit C**.

4.    In the Complaint, Plaintiffs allege that commercial emails to Washington citizens sent by Ulta violated Washington's Commercial Electronic Mail Act ("CEMA") and the Consumer Protection Act ("CPA") because they allegedly contain false or misleading information in their subject lines.  *See* Compl. ¶¶ 3-5, 7.  Plaintiffs seek injunctive relief, the greater of Plaintiffs' actual damages or trebled statutory damages, and attorneys' fees and costs. *See id*. at ¶¶ 7, 91, 101, § VIII.

5.    Plaintiffs allege that they are both residents of Washington, and they purport to bring this lawsuit on behalf of a putative class of  "[a]ll Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period."  Compl. ¶¶ 10, 74.

## III.    <u>REMOVAL IS TIMELY</u>

6.    As required by 28 U.S.C. § 1446(b), Ulta is filing this Notice of Removal well within thirty (30) days of receipt and service of the Complaint, given that service has not occurred yet.

7.    On June 26, 2025, Plaintiffs filed the Complaint. *See Exhibit A*.

NOTICE OF REMOVAL - page 4

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

8.      On July 9, 2025, Plaintiffs attempted service on an Ulta entity (Ulta Beauty), which is not a corporation registered to do business in Washington State, through CSC, incorrectly described as Ulta Beauty's registered agent in Washington State.  *See Exhibit B*.

9.      On July 14, 2025, CSC rejected Plaintiffs' improper service.  *See Exhibit C*.

10.     Ulta is not aware of any other attempt to serve any Ulta entity with the Complaint.

11.     Even if the July 9, 2025 attempt to serve were effective – and it was not – this Notice of Removal is still timely.  Thirty days from Plaintiffs' July 9, 2025 attempted service is August 8, 2025.  Because this Notice of Removal was filed well before August 8, 2025, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Russo v. Fed. Med. Servs., Inc.*, 756 F. Supp. 3d 748, 755 (N.D. Cal. 2024); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  Ulta has not filed a previous Notice of Removal or made a request for the relief sought herein.

## IV.    <u>VENUE</u>

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the United States District Court for the Eastern District of

NOTICE OF REMOVAL - page 5

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Washington is the appropriate court for removal of an action from Spokane County

Superior Court.

## V.    DIVERSITY JURISDICTION

13.    This is a civil action over which this Court has jurisdiction under 28

U.S.C. § 1332 because complete diversity of citizenship exists between the parties,

and the amount in controversy exceeds $75,000 for each named Plaintiff,

exclusive of interests and costs.

### A. Complete Diversity Exists.

14.    Plaintiffs and Ulta are citizens of different states.

15.    "An individual is a citizen of the state in which he is domiciled[.]"

*Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (internal

citations omitted).    When evaluating diversity of citizenship jurisdiction,

citizenship is decided by the individual's domicile at the time that the lawsuit is

filed.   *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546 (9th Cir. 2000)

(citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).   Domicile is decided by

"an individual's 1) residence in a state, and 2) his intent to remain indefinitely."

*Boon*, 229 F. Supp. 2d at 1019 (internal citation omitted).   Evidence of continuing

residence creates a favorable presumption of domicile.   *Washington v. Hovensa*

NOTICE OF REMOVAL - page 6

*LLC*, 652 F.3d 340, 345-46 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

16.    Starting with Plaintiffs, they allege they reside in Spokane County, Washington and are residents of the State of Washington.  Compl. ¶¶ 7, 10, 89. Accordingly, Plaintiffs were and are domiciled in Washington and are citizens of the State of Washington.

17.    As to Ulta, a corporation is determined to be a citizen of the state in which it has been incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  For this inquiry, the "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

18.    Ulta Beauty, Inc. is incorporated in Delaware and has its principal place of business in Bolingbrook, Illinois.  Compl. ¶ 11.  As a result, Ulta is a citizen of Delaware and Illinois.

NOTICE OF REMOVAL - page 7



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

19.     Ulta Salon, Cosmetics & Fragrance, Inc. is incorporated in Delaware and has its principal place of business in Bolingbrook, Illinois.

20.     Complete diversity pursuant to 28 U.S.C. §§ 1332(a) and 1441(b) exists because this is a civil action between citizens of different states: Washington, Delaware, and Illinois.

**B.   The Amount in Controversy Exceeds $75,000 Per Named Plaintiff.**

21.     The amount-in-controversy requirement under 28 U.S.C. §§ 1332(a) is also fulfilled because Plaintiffs' Complaint seeks an amount in excess of $75,000 for each named Plaintiff.   Specifically, Plaintiffs request (1) statutory damages[2] in the amount of $500 for each purported violation of CEMA pursuant to RCW 19.190.020(1)(b); (2) treble damages pursuant to RCW 19.86.090; and (3) costs and attorneys' fees in connection with this litigation, pursuant to RCW 19.86.090.   *See* Compl.  ¶¶ 2, 7, 101.   These three damages components easily exceed $75,000 per Plaintiff.

_____

[2] Ulta disputes that Plaintiffs can seek statutory damages under the terms of CEMA and the CPA. Yet, for purposes of diversity jurisdiction, these amounts may be included.

NOTICE OF REMOVAL - page 8

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

22.     Ulta need not prove the amount in controversy for purposes of this Notice of Removal.  Instead, it need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  *Academy of Country Music v. Continental Casualty Co.*, 991 F.3d 1059, 1068-70 (9th Cir. 2021) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, at 81, 89 (2014)). "[A] removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal quotations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions").

23.     For purposes of determining the amount in controversy for removal, a court may include actual damages, punitive damages, and attorneys' fees authorized by contract or statute.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007); *see also Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *see also Trepanier v. Progressive Direct Ins. Co.*, No. C-12-0987-JCC, 2012 WL 12882865, at *2 (W.D. Wash. Sept. 19, 2012) ("[T]he amount in controversy

NOTICE OF REMOVAL - page 9

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

includes not just actual damages, but also statutorily authorized attorneys' fees and treble damages.").

24.    Plaintiffs claim that a violation of the Washington statutes at issue occurs each time Ulta initiates an email to Plaintiffs. *See Compl. ¶¶ 86-91, 93-101.*

25.    Plaintiffs also seek treble damages under the CPA. *Compl. ¶ 101.* Treble damages are included in the calculation of damages for diversity jurisdiction. *See*, *e.g.*, *Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 871 (W.D. Wash. 2021).

26.    Since Plaintiffs are seeking treble damages, each purported statutory violation equates to $500 x 3 or $1,500 per email.

27.    Plaintiffs' claims further rest on the contention that Ulta "bombards" consumers with "repeated" emails and notifications creating an alleged false sense of urgency about the need to make a purchase. Compl. ¶¶ 4-5, 69. Thus, Plaintiffs are necessarily alleging that they each received multiple emails.

28.    Plaintiffs identify 13 emails that they presumably received. *Id. at ¶¶ 70, 73, Exhibit A.* 13 emails at $1,500 each is $19,500 per Plaintiff.

29.    Plaintiffs additionally allege that Ulta sends at least 400 emails per year on average to its consumers. Compl. ¶ 59. If Plaintiffs seek statutory and

NOTICE OF REMOVAL - page 10

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

treble damages for even 51 of those 400 emails (at $1500 per email), that exceeds the $75,000 amount in controversy threshold. As a result, Plaintiffs' claims for statutory and treble damages are sufficient for diversity jurisdiction.

30.    Plaintiffs also seek to recover attorney's fees. *Compl. ¶ 101.* Plaintiffs' potential recovery in attorneys' fees on its own could exceed $75,000 per Plaintiff.

31.    "In determining the amount in controversy, the court may consider damage requests and awards in similar cases." *Ballard v. Corinthian Colleges, Inc.*, No. C-06-5256-FDB, 2006 WL 1806190 at *2 (W.D. Wash. June 28, 2006) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (*as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006))). In past litigation, attorneys from the same law firms representing Plaintiffs represented that their hourly rates for partners at their firms range from $500 - $1,308 per hour. *See Crockett Decl., ¶¶ 3-6.* At these rates, Plaintiffs' counsel would only need to contribute around 60 hours at $1,308 per hour or 151 hours at $500 per hour of attorney time (excluding other fees and costs) to exceed the $75,000 threshold in attorney's fees alone. Therefore, Plaintiffs' attorney's fees alone would exceed the $75,000 threshold.

NOTICE OF REMOVAL - page 11



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

32.    Based on the foregoing, the amount in controversy requirement is satisfied.

33.    Accordingly, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and this action is properly removed to this Court.

## VI.    ALTERNATIVELY, THE COURT HAS JURISDICTION UNDER CAFA

34.    In addition to diversity jurisdiction, removal is also proper under CAFA and pursuant to 28 U.S.C. §§ 1332(d), 1441(a), 1446, and 1453. This is a putative class action[3] with more than 100 class members, minimal diversity exists, and the total amount in controversy exceeds $5 million in the aggregate, exclusive of interest and costs. Ulta denies that Plaintiffs—or the class they purport to represent—are entitled to the relief requested in their Complaint and denies Plaintiffs' factual allegations. Even so, all requirements for jurisdiction under CAFA have been met here.

### A. CAFA's Diversity of Citizenship Requirement is Met.

35.    Under CAFA,  a party seeking removal is required to show that minimal diversity exists, *i.e.*, that one putative class member is a citizen of a state

---

[3] Ulta denies that class certification is appropriate and reserves the right to contest class certification at the appropriate time in proceedings.

NOTICE OF REMOVAL - page 12

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

different from any defendant. U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to achieve its goals, CAFA gives expanded diversity jurisdiction for class actions that meet the minimal diversity requirement set forth in U.S.C. § 1332(d)(2)).

36.     As discussed above, Plaintiffs Shahpur and Smith are citizens of Washington, and Ulta is a citizen of Illinois and Delaware for purposes of diversity jurisdiction. *See supra* ¶¶ 16-18.  Therefore, minimal diversity of citizenship exists for this Court to have jurisdiction under 28 U.S.C. § 1332(d)(2) and therefore under CAFA.

**B.**  **Plaintiffs Contend That The Proposed Class Has More Than 100 Members.**

37.     Because here Plaintiffs allege that "the Class is estimated to minimally contain thousands of members" (*see* Compl. ¶ 78), CAFA's requirement that a proposed class membership be comprised of at least 100 members is fulfilled.  28 U.S.C. § 1332(d)(5)(B).

**C.**  **The Amount in Controversy Exceeds $5 million.**[4]

---

[4] This Notice of Removal addresses the nature and amount of damages that the Complaint places in controversy. Ulta refers to specific damages estimates and

NOTICE OF REMOVAL - page 13

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

38.     Pursuant to CAFA, claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interests and costs.  28 U.S.C. § 1332(d)(6).

39.     The defining question is what amount a plaintiff's complaint places "in controversy," not what a defendant may actually owe in damages.  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted) (confirming the directive to courts that they are  "to first look to the complaint in determining the amount in controversy"); see also *Jauregui v. Roadrunner Transp.*

_____

cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum.  Ulta maintains that each of Plaintiffs' claims lack merit and that Ulta is not liable to Plaintiffs or any putative class member in any amount.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

NOTICE OF REMOVAL - page 14

*Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved."). The defendant's burden to meet the jurisdictional amount requirement under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (emphasis in original) (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)); see also *LaCross*, 775 F.3d at 1203 (rejecting plaintiff's argument for remand based on his contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (when alleging an amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages that are in controversy.")

40.    "[T]he removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the

NOTICE OF REMOVAL - page 15

reasoning and underlying assumptions are reasonable." *See Jauregui*, 28 F.4th at 993 (quoting *LaCross*, 775 F.3d at 1201); *see also Marano v. Liberty Mut. Grp., Inc.*, No. SA-cv-20-02215-JCJ, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias*, 936 F.3d at 925 (9th Cir. 2019); *see also Kleinsasser v. Progressive Direct Ins. Co.*, No. C-17-5499- BHS, 2018 WL 3471185, at *11 (W.D. Wash. July 19, 2018) (holding that overall the defendant's "chain of reasoning and underlying assumptions are reasonable" even if its proposed calculation "overestimates some individual damages" and finding that the removing defendant met its burden to establish that the amount in controversy was over $5 million).

41.    In evaluating an amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to calculate the amount in controversy.  *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017); *see also Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325-FCD-EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (denying

NOTICE OF REMOVAL - page 16

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6

remand where defendant applied reasonable assumptions to complaint that had no fact-specific allegations because a plaintiff seeking to avoid removal "could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.").

7
8
9
10
11
12
13

42.    While Ulta denies Plaintiffs' factual allegations and denies that Plaintiffs or the class they seek to represent are entitled to any of the requested relief, it is clear that the allegations in their Complaint put more than $5 million into controversy when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).

14
15
16

   i.    ***Plaintiffs' Allegations Regarding Violations of CEMA and the CPA Establish Over $5 Million in Controversy.***

17
18
19
20
21
22
23
24
25
26
27
28

43.    Plaintiffs allege that Ulta "[d]oes just what CEMA prohibits" when it "bombards Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds[.]"  Compl. ¶¶ 3-4.  Plaintiffs further claim that Ulta violated Washington consumers' rights under CEMA and the CPA and seek statutory damages pursuant to RCW 19.190.20 and RCW 19.86.020 and treble damages pursuant to RCW 19.86.090.  *Id*. at ¶¶ 7, 101.  Based on Plaintiffs' allegations, the amount in controversy exceeds $5 million.

29
30

NOTICE OF REMOVAL - page 17

44.    Since Plaintiffs allege that their proposed class "is estimated to minimally contain thousands of members," *id*. at ¶ 78, implying at least 2,000 putative class members, if each of the 2,000 putative class member received just two emails each (which is hardly bombarding them with emails), the $5,000,000 amount in controversy would be met: 2,000 proposed class members x 2 emails each x $1,500 in statutory and treble damages = $6,000,000.

ii.    ***Plaintiffs' Request for Attorneys' Fees Establishes Additional Amount in Controversy, Further Exceeding the CAFA Requirement.***

45.    Plaintiffs also seek recovery of attorneys' fees.  Compl. § VIII(D). Attorneys' fees are appropriately included in establishing the amount in controversy.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (holding that "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy"); *Dawsey v. Travelers Indem. Co.*, Case No. 3:15-cv-05188-RBL, 2015 WL 4394545, at *3 (W.D. Wash. July 16, 2015) (allowing attorneys' fees of 25% of compensatory damages to be included in CAFA amount in controversy calculation).  "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the

NOTICE OF REMOVAL - page 18

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

removal notice[.]" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 n.4 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

46.     Ulta denies Plaintiffs' claim for attorneys' fees.  Even so, for removal purposes, the Ninth Circuit has held that future attorneys' fees estimates may be based on "customary rates . . . and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy.  *Fritsch*, 899 F.3d at 795 and 796, fn. 6.  Courts have used the 25% benchmark to determine potential fees for purposes of the CAFA amount in controversy.  *See, e.g., Dawsey*, 2015 WL 4394545, at *2–3 (adding 25% benchmark to estimated common fund value); *Berry v. Transdev Services, Inc.*, No. C-15-1299-RAJ, 2016 WL 11261499, at *4-5 (W.D. Wash. Jan. 11, 2016) ("Courts also recognize [] two possible benchmarks for estimating such attorneys' fees: an estimate under a lodestar calculation or using a 25% common fund benchmark.").  Courts therefore include a potential 25% fee award in the CAFA amount in controversy.

47.     Even though Ulta has already shown by a preponderance of the evidence that the amount in controversy for a purported class "estimated to minimally contain thousands of members" exceeds $5 million, *supra* ¶ 34, including attorneys' fees would accordingly increase the amount in controversy

NOTICE OF REMOVAL - page 19

EVANS, CRAVEN & LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

even further above that $5 million requirement.  A proposed class of 2,000 people who received two purportedly violative emails could seek statutory and trebled damages of $6,000,000.  A 25% fee award of $6,000,000 would be $1,500,000.

48.    Even if the 25% benchmark is not used, it is still reasonable to assume that Plaintiffs' potential future attorneys' fees place at least an additional $1 million in controversy.  Plaintiffs' attorneys have recently advised courts in other class actions that their hourly rates are as follows: Lynn Toops from Cohen & Malad, LLP charged an hourly rate of $780 in 2021; J. Gerald Stranch from Stranch, Jennings & Garvey charged an hourly rate of $1,308 in 2023; Samuel J. Strauss from Turke & Strauss LLP charged an hour rate of $700 in 2023; and Walter Smith from Smith & Dietrich Law Offices charged an hourly rate of $500 in 2024.  *See Crockett Decl., ¶¶ 3-6.*

49.    Based on the foregoing rates, and consistent with precedent in other class actions, the preponderance of the evidence shows that attorneys' fees are more than likely to increase the amount in controversy by at least $1 million if this case is litigated through trial, further exceeding the $5 million threshold for removal under CAFA.  *See e.g.*, *Williams v. PillPack, Inc.*, No. 3:19-cv-05282-DGE, 2025 WL 1149710, at *3 (W.D. Wash. Apr. 18, 2025) (granting request for attorneys' fees of more than $2 million sought in part by Smith & Dietrich); *Holy*

NOTICE OF REMOVAL - page 20

*v. Communityamerica Credit Union*, No. 4:19-cv-00629-FJG, 2020 WL 12604384, at *1-2 (W.D. Mo. Dec. 8, 2020) (granting fee award to Cohen & Malad and Stranch, Jennings & Garvey of $1,026,145.33 on settlement amount of $3,078,436.00); *see also In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

## D. **CAFA'S "Home-State" and "Local Controversy" Exceptions to Removal Do Not Apply.**

50.     CAFA's "home-state" and "local controversy" exceptions do not apply to this removal.  The "home state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed.  28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc*., 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[The home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed."). Ulta is not a citizen of Washington and, accordingly, this exception does not apply.

51.     Likewise, under the "local controversy exception," at least one defendant must be "a citizen of the State in which the action was originally filed." 28 U.S.C. 1332(d)(4)(A).  Again, Ulta is not a citizen of the State of Washington

NOTICE OF REMOVAL - page 21



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

where the action was filed, making both the local controversy exceptions inapplicable. *See supra* ¶¶ 18.

## VII.  NOTICE

52.    Ulta will promptly serve this Notice of Removal on all parties and will file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

53.    By filing this Notice of Removal, Ulta does not waive any defenses or arguments available to it and does not admit to any of Plaintiffs' allegations.

## VIII.  CONCLUSION

54.    Based on the foregoing, removal is proper to this Court, and Ulta hereby removes this case to the United States District Court for the Eastern District of Washington under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.  Ulta preserves any and all defenses to Plaintiffs' Complaint and requests that all further proceedings in this action be conducted in this court.

DATED this 1st day of August, 2025.

EVANS, CRAVEN & LACKIE, P.S.

By: _____

MARKUS W. LOUVIER, #39319
STEPHANIE A. CROCKETT #62797
Attorneys for Defendant

NOTICE OF REMOVAL - page 22

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Lynn A. Toops                              VIA REGULAR MAIL [X]
Natalie A. Lyons                           VIA OVERNIGHT MAIL [  ]
Ian R. Bensberg                                      VIA EMAIL [X]
COHENMALAD, LLP                          HAND DELIVERED [  ]
One Indiana Swuare, Suite 1400
Indianapolis, IN 46204
Tel: (371) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com


J. Gerard Stranch, IV                      VIA REGULAR MAIL [X]
STRANCH, JENNINGS & GARVEY,                VIA OVERNIGHT MAIL [  ]
PLLC                                                 VIA EMAIL [X]
223 Rosa L. Parks Avenue, Suite 200        HAND DELIVERED [  ]
Nashville, TN 37203
gstranch@stranchlaw.com


Samuel J. Strauss                          VIA REGULAR MAIL [X]
Raina V. Borrelli                          VIA OVERNIGHT MAIL [  ]
STRAUSS BORRELLI, LLP                                 VIA EMAIL [X]
980 N. Michigan Avenue, Suite 1610         HAND DELIVERED [  ]
Chicago, IL 60611
Tel. : (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

_____
STEPHANIE A. CROCKETT #62797

NOTICE OF REMOVAL - page 23



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# EXHIBIT A

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

N THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SPOKANE COUNTY

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ULTA BEAUTY, INC.,<br><br>        Defendant. | Case No.:    25-2-03149-32<br><br>SUMMONS |

TO:    Ulta Beauty, Inc., Defendant.

A lawsuit has been started against you in the above-entitled court by Selay Shahpur and Lindsey Smith, Plaintiffs. Plaintiffs' claim is stated in the written complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorneys for the Plaintiffs within 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one in which Plaintiffs are entitled to what they ask for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1    You may demand that the Plaintiffs file this lawsuit with the court. If you do so, the

2  demand must be in writing and must be served upon the Plaintiffs' attorneys. Within 14 days

3  after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on

4  you of this Summons and Complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6  that your written response, if any, may be served on time.

7    This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8  of Washington.

9

10

11    RESPECTFULLY SUBMITTED AND DATED this 26th day of June, 2025.

12

13                                By: /s/ Walter Smith
                                 Smith & Dietrich Law Offices, PLLC
14                                Walter Smith, WSBA #46695
                                 Email: walter@smithdietrich.com
15                                1226 State Avenue N.E., Suite 205
                                 Olympia, WA 98506
16                                Telephone: (360) 915-6952

17                                Lynn A. Toops*
18                                Natalie A. Lyons*
                                 Ian R. Bensberg*
19                                COHENMALAD, LLP
                                 One Indiana Square, Suite 1400
20                                Indianapolis, IN 46204
                                 Tel.: (317) 636-6481
21                                ltoops@cohenmalad.com
22                                ibensberg@cohenmalad.com

23                                J. Gerard Stranch, IV*
                                 Stranch, Jennings & Garvey, PLLC
24                                223 Rosa L. Parks Avenue, Suite 200
                                 Nashville, TN 37203
25                                Tel.: (615) 254-8801
26                                gstranch@stranchlaw.com

SUMMONS - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Samuel J. Strauss
Raina C. Borrelli*
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Attorneys for Plaintiff
* Applications for admission pro hac vice
forthcoming

SUMMONS - 3

Smith & Dietrich Law Offices PLLC
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SPOKANE COUNTY

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated, | Case No.:  25-2-03149-32 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| ULTA BEAUTY, INC., | |
| Defendant. | |

Plaintiffs Selay Shahpur and Lindsey Smith, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complains of Defendant Ulta Beauty, Inc. as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

3.    Defendant Ulta Beauty, Inc. ("Ulta"), does just what CEMA prohibits.

CLASS ACTION COMPLAINT - 1

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1    4.    Ulta bombards Washington consumers, including Plaintiffs, with commercial

2  emails whose subject lines employ various tactics to create a false sense of urgency in consumers'

3  minds—and ultimately, from consumers' wallets.

4    5.    This false urgency wastes consumers' time by enticing them to engage with Ulta's

5  marketing for fear of missing out and chokes consumers' email inboxes with repeated false

6  notifications that the time to act—*i.e. purchase*—is short.

7    6.    And through this deceptive time-sensitivity, Ulta falsely narrows the field—

8  steering consumers away from shopping for better deals—to its own products that must be

9  purchased *now*.

10    7.    Plaintiffs challenge Ulta's harassment of Washington consumers with deceptive

11  marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the

12  Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive

13  relief against such violations in the future.

**II.    JURISDICTION AND VENUE**

15    8.    The Court has jurisdiction of this case under RCW 2.08.010.

16    9.    Venue is proper in Spokane County under RCW 4.12.020(3) because Plaintiffs'

17  cause of action, or some part thereof, arose in Spokane County.

**III.    PARTIES**

19    10.    Plaintiffs Selay Shahpur and Lindsey Smith are residents of Spokane County,

20  Washington.

21    11.    Defendant Ulta Beauty Inc., is a corporation incorporated under the laws of

22  Delaware with its principal place of business at 1000 Remington Blvd., Suite 120, Bolingbrook,

23  Illinois.

**IV.    FACTUAL ALLEGATIONS**

25    **A.    CEMA protects Washington consumers from deceptive spam emails.**

26    12.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the

27  cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

CLASS ACTION COMPLAINT - 2

13.     In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14.     In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15.     And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16.     In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17.     In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18.     Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19.     Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20.     This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21.     Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and ... [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday

CLASS ACTION COMPLAINT - 3

1  promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't*
2  *Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

3      22.    The Legislature presciently intended CEMA to "provide some immediate relief"
4  for these problems by prohibiting among other things commercial emails that "contain untrue or
5  misleading information in the subject line." Laws of 1998, ch. 149, § 1.

6      23.    CEMA thereby protects Washington consumers against the "harms resulting from
7  deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud
8  actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

9      24.    CEMA's "truthfulness requirements" increase the costs of sending deceptive
10 commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

11     25.    CEMA's "truthfulness requirements" thereby advance the statute's aim of
12 protecting consumers "from the problems associated with commercial bulk e-mail" while
13 facilitating commerce "by eliminating fraud and deception." *Id.*

14     26.    CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language,
15 CEMA unambiguously prohibits "sending Washington residents commercial e-mails that
16 contain *any* false or misleading information in the subject lines of such e-mails." *Certification from*
17 *U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash.
18 2025).

19     27.    CEMA's protections do not depend on whether any email was (really or fictively)
20 solicited by consumers, nor on whether consumers relied on any false or misleading statement
21 contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

22     28.    The statute's only concern is to suppress false or misleading information in the
23 subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

24     **B.    The subject lines of Ulta's marketing emails make false time scarcity claims.**

25     29.    One common way online marketers "manipulate consumer choice by inducing false
26 beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce.
27 Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see*

CLASS ACTION COMPLAINT - 4                    **Smith & Dietrich Law Offices PLLC**
                                             1226 State Avenue N.E., Suite 205
                                             Olympia, WA 98506
                                             Tel. (360) 915-6952

*also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30.    The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patters to Light, supra* para. 26, at 22.

31.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture, supra* para. 26, at 26.

32.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

33.    Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

34.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit.*

35.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

36.    False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

37.    These false time scarcity claims are a staple of Ulta's email scheme to corral consumers to purchase its products, as the following examples demonstrate:

38.    **Urgent "$10 off" Spam Emails.** One common theme in Ulta's spam email subject headings is a deceptive time-sensitive "$10 off" deal.

39.    For example, on February 17, 2025, Ulta sent an email with the subject line, "Say

CLASS ACTION COMPLAINT - 5

bye to $10 off 50 or $20 off $100," indicating that consumers will miss out on this offer if they don't act immediately—as confirmed by the body of the email, which stated "Offer ends Mon, February 17 at 11:59pm CT."

40.     This was not true. On the very next day, February 18, 2025, Ulta issued another email with the subject heading "$10 off for you!" where the body of the email demonstrated that the "$10 off" deal offered on February 17 was, in fact, available through February 22, 2025.

41.     In another example, on May 10, 2024, Ulta sent an email with the subject line, "Your $10 off disappears - TOMORROW," indicating that consumers would miss out on this offer if they didn't act immediately—as confirmed by the body of the email, which stated "Offer ends May 11 at 11:59pm CT."

42.     But this offer didn't "disappear" as it was regularly available in May 2024. Ulta sent an email a few days later on May 24, 2024 with the subject heading, "$10 off in store or online?! We're in." And it blasted another email to consumers on May 31, 2024 where the subject line stated: " 😊 Just for you, —! Claim your $10 OFF now 😊." The content of both of these emails stated, in fine print, "Offer ends June 1 at 11:59pm CT."

43.     Later that same year, Ulta pummeled consumers with an email on Friday, October 18, 2024 that included the urgent subject heading, "Your $10 off expires Saturday."

44.     But in that same month, on October 29, it sent another email with the subject line, "$10 OFF just landed in your beauty bag." And that offer was "valid through 11.23.24."

45.     Indeed, Ulta ubiquitously offers the "$10 off" deal throughout a given year. In 2024, it sent emails offering "$10 off" in January, February, March, May, July, August, September, October, November, and December.

46.     And so far in 2025, it has offered the "$10 off" deal in January, February, March, and May.

47.     This persistent pattern of offering $10 off its products belies Ulta's repeated and deceptive assertions that the offer will "disappear" or that a consumer must "say bye" to such offers. In fact, the offer regenerates repeatedly from month to month to month.

CLASS ACTION COMPLAINT - 6

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

48.     **Urgent 50% Off Spam Emails.** Another deceptive subject line heading in Ulta's marketing emails is the "50% off" deal, as these examples show:

49.     For example, on March 27, 2025, Ulta blasted an email to consumers, stating in the subject heading: "LAST DAY! 50% off Beauty Steals 💖".

50.     But March 27 was not the "last day" for this 50% off deal. On March 28, it sent another email that invoked the same urgency in the subject line: "LAST CHANCE—50% OFF Beauty Steals."

51.     In another example, on March 23, 2024, Ulta repeated a familiar pattern, sending an email with the subject heading, "⚠ LAST CHANCE ⚠ Get 50% off Beauty Steals!" But, in fact, the deal was offered through March 28, 2024.

52.     And consumers had yet another "chance" at this deal just days later, on April 9, 2024, when it sent an email, offering in the subject line: "IT'S BACK! Up to 50% off during SPRING HAUL 💖"

53.     **Other Urgent Spam Emails.** Ulta is practiced in this trick of luring in consumers through an urgent subject heading that does not reflect the true availability of the deal itself, as these additional examples demonstrate:

54.     On July 21, 2024, Ulta blasted consumers with an email that had the heading, "LAST DAY to get 10% off."

55.     Yet, just four days later, on July 25, 2024, it ran a *better deal* that equated to 20% off (*i.e.* $20 off $100 and $10 off $50).

56.     And on November 4, 2023, Ulta ran an email campaign with the subject heading, "ENDS TODAY Up to 40% off makeup"—a "40% off" deal Ulta ran again on November 11, 2023.

57.     These and other examples of Ulta's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.     Ulta knows when it sends emails to Washington residents.**

58.     A sophisticated commercial enterprise, like Ulta, who is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing

CLASS ACTION COMPLAINT - 7                    Smith & Dietrich Law Offices PLLC
                                              1226 State Avenue N.E., Suite 205
                                              Olympia, WA 98506
                                              Tel. (360) 915-6952

1    where the recipients of its marketing emails are located. The means it employs are peculiarly with

2    its knowledge.

3         59.    First, the sheer volume of Ulta's email marketing put it on notice that Washington

4    residents would receive its emails. Since 2021, Ulta has been blasting out marketing emails at a

5    rate averaging (at least) 400 per year, 30 per month, and 1 per day.

6         60.    Indeed, it knows that Washington residents shop for and purchase its products from

7    the dozens of retail stores it has established in this State.

8         61.    Second, Ulta may obtain location information tied to email addresses when

9    consumers make purchases from Ulta through digital platforms, including Ulta's website, or

10   otherwise self-report such information to Ulta.

11        62.    Third, Ulta may obtain location information tied to email addresses by tracking the

12   IP addresses of devices used to open Ulta's emails, which in turn can be correlated to physical

13   location (as illustrated, for example, by the website https://whatismyipaddress.com/).

14        63.    Specifically, Ulta appears to use Salesforce Marketing Cloud to manage its email

15   marketing campaigns. This platform allows Ulta to identify anyone who receives its marketing

16   emails, determine who opens them, and track who clicks on any links within them.

17        64.    Ulta is likely able to infer the general geographic location of recipients by state

18   based on their IP address at the time of email open or link click.

19        65.    Fourth, Ulta may obtain location information tied to email addresses by purchasing

20   consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell

21   access to databases linking email addresses to physical locations, among other identifiers.

22        66.    Fifth, Ulta may obtain location information tied to email addresses by using

23   "identity resolution" services offered by companies such as LiveRamp, which can connect

24   consumers' email addresses to their physical locations, among other identifiers.

25        67.    Sixth, Ulta may obtain information that the recipients of its marketing emails are

26   Washington residents because that information is available, upon request, from the registrant of

27   the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

CLASS ACTION COMPLAINT - 8

68.     It is thus highly probable that a seller of Ulta's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.     Ulta violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.**

69.     Ulta has bombarded Plaintiffs Shahpur and Smith with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

70.     Both Plaintiffs received "$10 off" email promotions described in paragraphs 3-47, above. For example, Plaintiff Shahpur received the "Say bye to $10 off $50 or $20 off $100! 👋" *supra* ¶ 39. He also received the email saying, "Your $10 off expires Saturday," described *supra*, ¶ 43.

71.     These emails were false or misleading in violation of CEMA, for misrepresenting the availability and timing of the "$10 off" deals, as further described at ¶¶ 3-47.

72.     These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

73.     Upon information and belief, Plaintiffs Shahpur and Smith have received additional emails from Ulta with subject headings that likewise invoke false time scarcity.

## V.     CLASS ALLEGATIONS

74.     Plaintiffs brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

75.     Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

CLASS ACTION COMPLAINT - 9

1      76.    The Class Period extends from the date four years before this Class Action
2   Complaint is filed to the date a class certification order is entered in this action.

3      77.    Plaintiffs reserve the right to amend the Class definition as discovery reveals
4   additional emails containing false or misleading information in the subject line that Defendant sent
5   or caused to be sent during the Class Period to email addresses held by Washington residents.

6      78.    The Class is so numerous that joinder of all members is impracticable because the
7   Class is estimated to minimally contain thousands of members.

8      79.    There are questions of law or fact common to the class, including without limitation
9   whether Defendant sent commercial emails containing false or misleading information in the
10  subject line; whether Defendant sent such emails to email addresses it knew or had to reason to
11  know were held by Washington residents; whether Defendant's conduct violated CEMA; whether
12  Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act,
13  RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

14     80.    Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs
15  and Class members share the same statutory rights under CEMA and the CPA, which Defendant
16  violated in the same way by the uniform false or misleading marketing messages it sent to all
17  putative members.

18     81.    Plaintiffs will fairly and adequately protect the Class's interests because, among
19  other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading
20  marketing; have no interest adverse to the Class; and have retained competent counsel extensively
21  experienced in consumer protection and class action litigation.

22     82.    Defendant has acted on grounds generally applicable to the Class, in that, among
23  other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs
24  and the Class, which violate CEMA and the CPA in the same way, and from which it may be
25  enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief
26  with respect to the Class as a whole.

27     83.    The questions of law or fact common to the members of the Class predominate over

CLASS ACTION COMPLAINT - 10

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

84.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.

## VI.     CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

85.     Plaintiffs incorporate and realleges paragraphs 1–85 above.

86.     CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message ... to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that ... [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

87.     Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

88.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

89.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiffs and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

CLASS ACTION COMPLAINT - 11

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1    90.    Defendant initiated the transmission, conspired with another to initiate the

2  transmission, or assisted the transmission of such messages that contained false or misleading

3  information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

4    91.    For Defendant's violation of CEMA, Plaintiffs is entitled to all available relief,

5  including an injunction against further violations.

6                              **Second Claim to Relief**

7              **Violation of the Consumer Protection Act, RCW 19.86.020**

8    92.    Plaintiffs incorporate and realleges paragraphs 1–85 above.

9    93.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive

10  acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

11  RCW 19.86.020.

12    94.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

13    95.    A violation of CEMA establishes all the elements necessary to bring a private action

14  under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

15    96.    CEMA provides that "[n]o person may initiate the transmission, conspire with

16  another to initiate the transmission, or assist the transmission, of a commercial electronic mail

17  message ... to an electronic mail address that the sender knows, or has reason to know, is held by

18  a Washington resident that ... [c]ontains false or misleading information in the subject line."

19  RCW 19.190.020(1)(b).

20    97.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

21    98.    Defendant initiated the transmission, conspired with another to initiate the

22  transmission, or assisted the transition of "commercial electronic mail messages" within the

23  meaning of CEMA. RCW 19.190.010(2).

24    99.    Defendant initiated the transmission, conspired with another to initiate the

25  transmission, or assisted the transmission of such messages to electronic mail addresses that

26  Defendant knew, or had reason to know, were held by Washington residents.

27    100.    Defendant initiated the transmission, conspired with another to initiate the

CLASS ACTION COMPLAINT - 12            **Smith & Dietrich Law Offices PLLC**
                                        1226 State Avenue N.E., Suite 205
                                        Olympia, WA 98506
                                        Tel. (360) 915-6952

1   transmission, or assisted the transmission of such messages that contained false or misleading

2   information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

3       101.    For Defendant's violation of the CPA, Plaintiffs and putative members are entitled

4   to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated

5   damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

6                           **VII.   JURY DEMAND**

7       102.    Plaintiffs will demand a jury trial by separate document in accordance with Local

8   Civil Rule 38(b).

9                         **VIII.   PRAYER FOR RELIEF**

10  Plaintiffs ask that the Court

11      A.      Certify the proposed Class, appoint Plaintiffs as Class representatives, and appoint

12  undersigned counsel as Class counsel;

13      B.      Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining

14  Defendant from the unlawful conduct alleged;

15      C.      Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated

16  damages, trebled, according to proof;

17      D.      Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

18      E.      Order such further relief the Court finds appropriate.

19

20  DATE: June 26, 2025                    Respectfully submitted,
                                           /s/ Walter Smith
21                                         **Smith & Dietrich Law Offices, PLLC**
22                                         Walter Smith, WSBA #46695
                                           Email: walter@smithdietrich.com
23                                         1226 State Avenue N.E., Suite 205
                                           Olympia, WA 98506
24                                         Telephone: (360) 915-6952

25

26

27

CLASS ACTION COMPLAINT - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS &
GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com

Samuel J. Strauss
Raina C. Borrelli*
**STRAUSS BORRELLI, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff*
* Applications for admission *pro hac
vice* forthcoming

CLASS ACTION COMPLAINT - 14

1
2
3
4
5
6
7          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                              SPOKANE COUNTY
8
9    SELAY SHAHPUR and LINDSEY SMITH,          Case No.:
     on their own behalf and on behalf of others
10   similarly situated,                        **CLASS ACTION COMPLAINT**

11                          Plaintiffs,         **EXHIBIT A**

12           vs.

13   ULTA BEAUTY, INC.,

14                          Defendant.

15

| Date | Subject Line |
|------|--------------|
| 11/4/23 | ENDS TODAY Up to 40% off makeup |
| 3/23/24 | ⚠ LAST CHANCE ⚠ Get 50% off Beauty Steals! |
| 5/10/24 | Your $10 off disappears - TOMORROW |
| 7/8/24 | FINAL DAY $10 off $50 or $20 off 100 |
| 7/21/24 | LAST DAY to get 10% off |
| 8/23/24 | Say bye 👋 to your $10 OFF tomorrow… |
| 10/18/24 | Your $10 off expires Saturday |
| 1/24/25 | Say bye to your $10 OFF tomorrow… 👋 |
| 2/17/25 | Say bye to $10 off 50 or $20 off $100 |
| 3/27/25 | LAST DAY! 50% off Beauty Steals 💜 |
| 3/27/25 | LAST CHANCE—50% off Beauty Steals ends today! |
| 4/25/25 | LAST CALL: $10 off $40 |
| 4/25/25 | ⚠ $10 off: LAST DAY to spend it! ⚠ |

16
17
18
19
20
21
22
23
24
25
26
27

CLASS ACTION COMPLAINT EXHIBIT A - 1

**FILED**

**JUN 26, 2025**

Timothy W Fitzgerald
Spokane CountyClerk

(Copy Receipt)          Clerk's Date Stamp

|  **SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE** | **JUDGE RAYMOND F. CLARY 99** |
|---|---|
| SHAHPUR, SELAY ETAL<br><br>**Plaintiff(s)/Petitioner(s),**<br>**vs.**<br>ULTA BEAUTY INC<br><br>**Defendant(s)/Respondent(s).** | **CASE NO. 25-2-03149-32**<br><br>**CASE ASSIGNMENT NOTICE AND ORDER (NTAS)**<br><br>**CASE STATUS CONFERENCE DATE:**<br>**SEPTEMBER 26, 2025 AT 8:30 AM** |

## ORDER

YOU ARE HEREBY NOTIFIED that this case is preassigned for all further proceedings to **JUDGE Raymond F. Clary.**

**You are required to attend a Case Status Conference before your assigned judge on the date also noted above.   The Joint Case Status Report must be completed and brought to the Status Conference.  A Case Schedule Order, with the trial date, will be issued at the Status Conference.**

Under the individual calendar system, the court will operate on a four-day trial week. Trials will commence on Monday, Tuesday, Wednesday or Thursday. Motion Calendars are held on Friday. All motions, other than ex parte motions, must be scheduled with the assigned judge. Counsel must contact the assigned court to schedule motions and working copies of all motion pleadings must be provided to the assigned court at the time of filing with the Clerk of Court. Pursuant to LCR 40 (b) (9), motions must be confirmed no later than 12:00 noon three days before the hearing by notifying the judicial assistant for the assigned judge.

Please contact the assigned court to schedule matters regarding this case. You may contact the assigned court by phone, court department e-mail or through the Spokane County Superior Court web page at **https://www.spokanecounty.org/4625/Superior-Court**

DATED: 06/26/2025

MICHELLE D. SZAMBELAN
PRESIDING JUDGE

**NOTICE:  The plaintiff shall serve a copy of the Case Assignment Notice on the defendant(s).**

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

25-2-03149-32

**CIVIL: Torts**

SPOKANE COUNTY SUPERIOR COURT
Case Information Cover Sheet (CICS)

Case Number_____    Case Title <u>Shahpur v. Ulta Beauty Inc.</u>_____

**Attorney Name** <u>Walter Smith</u>_____    **Bar Membership Number** <u>46695</u>

Please check one category that best describes this case for indexing purposes.  Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources.  Cause of action definitions are listed on the back of this form.  Thank you for your cooperation.

**TORT, MEDICAL MALPRACTICE**
☐  MED    Hospital
☐  MED    Medical Doctor
☐  MED    Other Health Care Professional

**TORT, MOTOR VEHICLE**
☐  TMV    Death
☐  TMV    Non-Death Injuries
☐  TMV    Property Damage Only

**TORT, NON-MOTOR VEHICLE**
■  CPA    Consumer Protection Act
☐  MAL    Other Malpractice
☐  PIN    Asbestos
☐  PIN    Personal Injury
☐  PRP    Property Damages
☐  TTO    Products Liability
☐  VVT    Victims of Motor Vehicle Theft-Civil
☐  WDE    Wrongful Death

*Please Note:  Public information in court files and pleadings may be posted on a public Web site.*

*Last updated: 05/21/2025*

# EXHIBIT B

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

N THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SPOKANE COUNTY

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ULTA BEAUTY, INC.,<br><br>Defendant. | Case No.:    25-2-03149-32<br><br>SUMMONS |

TO:    Ulta Beauty, Inc., Defendant.

A lawsuit has been started against you in the above-entitled court by Selay Shahpur and Lindsey Smith, Plaintiffs. Plaintiffs' claim is stated in the written complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorneys for the Plaintiffs within 20 days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one in which Plaintiffs are entitled to what they ask for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1    You may demand that the Plaintiffs file this lawsuit with the court. If you do so, the

2    demand must be in writing and must be served upon the Plaintiffs' attorneys. Within 14 days

3    after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on

4    you of this Summons and Complaint will be void.

5        If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6    that your written response, if any, may be served on time.

7        This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8    of Washington.

9

10

11        RESPECTFULLY SUBMITTED AND DATED this 26th day of June, 2025.

12

13                                          By: /s/ Walter Smith
                                            Smith & Dietrich Law Offices, PLLC
14                                          Walter Smith, WSBA #46695
                                            Email: walter@smithdietrich.com
15                                          1226 State Avenue N.E., Suite 205
                                            Olympia, WA 98506
16                                          Telephone: (360) 915-6952

17                                          Lynn A. Toops*
18                                          Natalie A. Lyons*
                                            Ian R. Bensberg*
19                                          COHENMALAD, LLP
                                            One Indiana Square, Suite 1400
20                                          Indianapolis, IN 46204
                                            Tel.: (317) 636-6481
21                                          ltoops@cohenmalad.com
22                                          ibensberg@cohenmalad.com

23                                          J. Gerard Stranch, IV*
                                            Stranch, Jennings & Garvey, PLLC
24                                          223 Rosa L. Parks Avenue, Suite 200
                                            Nashville, TN 37203
25                                          Tel.: (615) 254-8801
26                                          gstranch@stranchlaw.com

SUMMONS - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Samuel J. Strauss
Raina C. Borrelli*
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

Attorneys for Plaintiff
* Applications for admission pro hac vice
forthcoming

SUMMONS - 3

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SPOKANE COUNTY

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ULTA BEAUTY, INC.,<br><br>        Defendant. | Case No.:  25-2-03149-32<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Selay Shahpur and Lindsey Smith, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complains of Defendant Ulta Beauty, Inc. as follows:

## I.  INTRODUCTION

1.      In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.      Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

3.      Defendant Ulta Beauty, Inc. ("Ulta"), does just what CEMA prohibits.

CLASS ACTION COMPLAINT - 1

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

4.    Ulta bombards Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5.    This false urgency wastes consumers' time by enticing them to engage with Ulta's marketing for fear of missing out and chokes consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6.    And through this deceptive time-sensitivity, Ulta falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7.    Plaintiffs challenge Ulta's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.    JURISDICTION AND VENUE

8.    The Court has jurisdiction of this case under RCW 2.08.010.

9.    Venue is proper in Spokane County under RCW 4.12.020(3) because Plaintiffs' cause of action, or some part thereof, arose in Spokane County.

## III.    PARTIES

10.    Plaintiffs Selay Shahpur and Lindsey Smith are residents of Spokane County, Washington.

11.    Defendant Ulta Beauty Inc., is a corporation incorporated under the laws of Delaware with its principal place of business at 1000 Remington Blvd., Suite 120, Bolingbrook, Illinois.

## IV.    FACTUAL ALLEGATIONS

**A.    CEMA protects Washington consumers from deceptive spam emails.**

12.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

CLASS ACTION COMPLAINT - 2

13.     In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14.     In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15.     And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16.     In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17.     In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18.     Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19.     Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20.     This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21.     Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and ... [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday

CLASS ACTION COMPLAINT - 3

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1  promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't*
2  *Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

3      22.     The Legislature presciently intended CEMA to "provide some immediate relief"
4  for these problems by prohibiting among other things commercial emails that "contain untrue or
5  misleading information in the subject line." Laws of 1998, ch. 149, § 1.

6      23.     CEMA thereby protects Washington consumers against the "harms resulting from
7  deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud
8  actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

9      24.     CEMA's "truthfulness requirements" increase the costs of sending deceptive
10 commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

11     25.     CEMA's "truthfulness requirements" thereby advance the statute's aim of
12 protecting consumers "from the problems associated with commercial bulk e-mail" while
13 facilitating commerce "by eliminating fraud and deception." *Id.*

14     26.     CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language,
15 CEMA unambiguously prohibits "sending Washington residents commercial e-mails that
16 contain *any* false or misleading information in the subject lines of such e-mails." *Certification from*
17 *U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash.
18 2025).

19     27.     CEMA's protections do not depend on whether any email was (really or fictively)
20 solicited by consumers, nor on whether consumers relied on any false or misleading statement
21 contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

22     28.     The statute's only concern is to suppress false or misleading information in the
23 subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

24     **B.     The subject lines of Ulta's marketing emails make false time scarcity claims.**

25     29.     One common way online marketers "manipulate consumer choice by inducing false
26 beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce.
27 Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see*

CLASS ACTION COMPLAINT - 4                    **Smith & Dietrich Law Offices PLLC**
                                             1226 State Avenue N.E., Suite 205
                                             Olympia, WA 98506
                                             Tel. (360) 915-6952

*also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30.     The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patters to Light, supra* para. 26, at 22.

31.     False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture, supra* para. 26, at 26.

32.     Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

33.     Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

34.     False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit.*

35.     Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

36.     False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

37.     These false time scarcity claims are a staple of Ulta's email scheme to corral consumers to purchase its products, as the following examples demonstrate:

38.     **Urgent "$10 off" Spam Emails.** One common theme in Ulta's spam email subject headings is a deceptive time-sensitive "$10 off" deal.

39.     For example, on February 17, 2025, Ulta sent an email with the subject line, "Say

CLASS ACTION COMPLAINT - 5                      **Smith & Dietrich Law Offices PLLC**
                                                1226 State Avenue N.E., Suite 205
                                                Olympia, WA 98506
                                                Tel. (360) 915-6952

bye to $10 off 50 or $20 off $100," indicating that consumers will miss out on this offer if they don't act immediately—as confirmed by the body of the email, which stated "Offer ends Mon, February 17 at 11:59pm CT."

40.     This was not true. On the very next day, February 18, 2025, Ulta issued another email with the subject heading "$10 off for you!" where the body of the email demonstrated that the "$10 off" deal offered on February 17 was, in fact, available through February 22, 2025.

41.     In another example, on May 10, 2024, Ulta sent an email with the subject line, "Your $10 off disappears - TOMORROW," indicating that consumers would miss out on this offer if they didn't act immediately—as confirmed by the body of the email, which stated "Offer ends May 11 at 11:59pm CT."

42.     But this offer didn't "disappear" as it was regularly available in May 2024. Ulta sent an email a few days later on May 24, 2024 with the subject heading, "$10 off in store or online?! We're in." And it blasted another email to consumers on May 31, 2024 where the subject line stated: " 😈 Just for you, —! Claim your $10 OFF now 😈 ." The content of both of these emails stated, in fine print, "Offer ends June 1 at 11:59pm CT."

43.     Later that same year, Ulta pummeled consumers with an email on Friday, October 18, 2024 that included the urgent subject heading, "Your $10 off expires Saturday."

44.     But in that same month, on October 29, it sent another email with the subject line, "$10 OFF just landed in your beauty bag." And that offer was "valid through 11.23.24."

45.     Indeed, Ulta ubiquitously offers the "$10 off" deal throughout a given year. In 2024, it sent emails offering "$10 off" in January, February, March, May, July, August, September, October, November, and December.

46.     And so far in 2025, it has offered the "$10 off" deal in January, February, March, and May.

47.     This persistent pattern of offering $10 off its products belies Ulta's repeated and deceptive assertions that the offer will "disappear" or that a consumer must "say bye" to such offers. In fact, the offer regenerates repeatedly from month to month to month.

CLASS ACTION COMPLAINT - 6                     **Smith & Dietrich Law Offices PLLC**
                                               1226 State Avenue N.E., Suite 205
                                               Olympia, WA 98506
                                               Tel. (360) 915-6952

48.     **Urgent 50% Off Spam Emails.** Another deceptive subject line heading in Ulta's marketing emails is the "50% off" deal, as these examples show:

49.     For example, on March 27, 2025, Ulta blasted an email to consumers, stating in the subject heading: "LAST DAY! 50% off Beauty Steals 🦋".

50.     But March 27 was not the "last day" for this 50% off deal. On March 28, it sent another email that invoked the same urgency in the subject line: "LAST CHANCE—50% OFF Beauty Steals."

51.     In another example, on March 23, 2024, Ulta repeated a familiar pattern, sending an email with the subject heading, " ⚠ LAST CHANCE ⚠ Get 50% off Beauty Steals!" But, in fact, the deal was offered through March 28, 2024.

52.     And consumers had yet another "chance" at this deal just days later, on April 9, 2024, when it sent an email, offering in the subject line: "IT'S BACK! Up to 50% off during SPRING HAUL 🦋"

53.     **Other Urgent Spam Emails.** Ulta is practiced in this trick of luring in consumers through an urgent subject heading that does not reflect the true availability of the deal itself, as these additional examples demonstrate:

54.     On July 21, 2024, Ulta blasted consumers with an email that had the heading, "LAST DAY to get 10% off."

55.     Yet, just four days later, on July 25, 2024, it ran a *better deal* that equated to 20% off (*i.e.* $20 off $100 and $10 off $50).

56.     And on November 4, 2023, Ulta ran an email campaign with the subject heading, "ENDS TODAY Up to 40% off makeup"—a "40% off" deal Ulta ran again on November 11, 2023.

57.     These and other examples of Ulta's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.     Ulta knows when it sends emails to Washington residents.**

58.     A sophisticated commercial enterprise, like Ulta, who is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing

CLASS ACTION COMPLAINT - 7

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

1  where the recipients of its marketing emails are located. The means it employs are peculiarly with

2  its knowledge.

3     59.    First, the sheer volume of Ulta's email marketing put it on notice that Washington

4  residents would receive its emails. Since 2021, Ulta has been blasting out marketing emails at a

5  rate averaging (at least) 400 per year, 30 per month, and 1 per day.

6     60.    Indeed, it knows that Washington residents shop for and purchase its products from

7  the dozens of retail stores it has established in this State.

8     61.    Second, Ulta may obtain location information tied to email addresses when

9  consumers make purchases from Ulta through digital platforms, including Ulta's website, or

10  otherwise self-report such information to Ulta.

11     62.    Third, Ulta may obtain location information tied to email addresses by tracking the

12  IP addresses of devices used to open Ulta's emails, which in turn can be correlated to physical

13  location (as illustrated, for example, by the website https://whatismyipaddress.com/).

14     63.    Specifically, Ulta appears to use Salesforce Marketing Cloud to manage its email

15  marketing campaigns. This platform allows Ulta to identify anyone who receives its marketing

16  emails, determine who opens them, and track who clicks on any links within them.

17     64.    Ulta is likely able to infer the general geographic location of recipients by state

18  based on their IP address at the time of email open or link click.

19     65.    Fourth, Ulta may obtain location information tied to email addresses by purchasing

20  consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell

21  access to databases linking email addresses to physical locations, among other identifiers.

22     66.    Fifth, Ulta may obtain location information tied to email addresses by using

23  "identity resolution" services offered by companies such as LiveRamp, which can connect

24  consumers' email addresses to their physical locations, among other identifiers.

25     67.    Sixth, Ulta may obtain information that the recipients of its marketing emails are

26  Washington residents because that information is available, upon request, from the registrant of

27  the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

CLASS ACTION COMPLAINT - 8

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

68.     It is thus highly probable that a seller of Ulta's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.     Ulta violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.**

69.     Ulta has bombarded Plaintiffs Shahpur and Smith with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

70.     Both Plaintiffs received "$10 off" email promotions described in paragraphs 3-47, above. For example, Plaintiff Shahpur received the "Say bye to $10 off $50 or $20 off $100! 👋" *supra* ¶ 39. He also received the email saying, "Your $10 off expires Saturday," described *supra*, ¶ 43.

71.     These emails were false or misleading in violation of CEMA, for misrepresenting the availability and timing of the "$10 off" deals, as further described at ¶¶ 3-47.

72.     These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

73.     Upon information and belief, Plaintiffs Shahpur and Smith have received additional emails from Ulta with subject headings that likewise invoke false time scarcity.

## V.     CLASS ALLEGATIONS

74.     Plaintiffs brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

75.     Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

CLASS ACTION COMPLAINT - 9

76.    The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

77.    Plaintiffs reserve the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

78.    The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

79.    There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

80.    Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

81.    Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

82.    Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

83.    The questions of law or fact common to the members of the Class predominate over

CLASS ACTION COMPLAINT - 10

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

84.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.

## VI.     CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

85.     Plaintiffs incorporate and realleges paragraphs 1–85 above.

86.     CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

87.     Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

88.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

89.     Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiffs and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

CLASS ACTION COMPLAINT - 11

90.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

91.    For Defendant's violation of CEMA, Plaintiffs is entitled to all available relief, including an injunction against further violations.

### Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

92.    Plaintiffs incorporate and realleges paragraphs 1–85 above.

93.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

94.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

95.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

96.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message ... to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that ... [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

97.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

98.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

99.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

100.   Defendant initiated the transmission, conspired with another to initiate the

CLASS ACTION COMPLAINT - 12

1  transmission, or assisted the transmission of such messages that contained false or misleading

2  information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

3    101.    For Defendant's violation of the CPA, Plaintiffs and putative members are entitled

4  to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated

5  damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

**VII.  JURY DEMAND**

7    102.    Plaintiffs will demand a jury trial by separate document in accordance with Local

8  Civil Rule 38(b).

**VIII.  PRAYER FOR RELIEF**

10  Plaintiffs ask that the Court

11    A.    Certify the proposed Class, appoint Plaintiffs as Class representatives, and appoint

12  undersigned counsel as Class counsel;

13    B.    Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining

14  Defendant from the unlawful conduct alleged;

15    C.    Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated

16  damages, trebled, according to proof;

17    D.    Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

18    E.    Order such further relief the Court finds appropriate.

20  DATE: June 26, 2025

Respectfully submitted,
/s/ Walter Smith
**Smith & Dietrich Law Offices, PLLC**
Walter Smith, WSBA #46695
Email: walter@smithdietrich.com
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Telephone: (360) 915-6952

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS &**
**GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com

Samuel J. Strauss
Raina C. Borrelli*
**STRAUSS BORRELLI, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff*
* Applications for admission *pro hac*
*vice* forthcoming

CLASS ACTION COMPLAINT - 14

1
2
3
4
5
6
7    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
     SPOKANE COUNTY
8

9   SELAY SHAHPUR and LINDSEY SMITH,        Case No.:
    on their own behalf and on behalf of others
10  similarly situated,                     **CLASS ACTION COMPLAINT**

11              Plaintiffs,                  **EXHIBIT A**

12       vs.

13  ULTA BEAUTY, INC.,

14              Defendant.

15

16
| Date | Subject Line |
|------|--------------|
| 11/4/23 | ENDS TODAY Up to 40% off makeup |
| 3/23/24 | ⚠ LAST CHANCE ⚠ Get 50% off Beauty Steals! |
| 5/10/24 | Your $10 off disappears - TOMORROW |
| 7/8/24 | FINAL DAY $10 off $50 or $20 off 100 |
| 7/21/24 | LAST DAY to get 10% off |
| 8/23/24 | Say bye 👋 to your $10 OFF tomorrow… |
| 10/18/24 | Your $10 off expires Saturday |
| 1/24/25 | Say bye to your $10 OFF tomorrow… 👋 |
| 2/17/25 | Say bye to $10 off 50 or $20 off $100 |
| 3/27/25 | LAST DAY! 50% off Beauty Steals 💜 |
| 3/27/25 | LAST CHANCE—50% off Beauty Steals ends today! |
| 4/25/25 | LAST CALL: $10 off $40 |
| 4/25/25 | ⚠ $10 off: LAST DAY to spend it! ⚠ |

17
18
19
20
21
22
23
24
25
26
27

CLASS ACTION COMPLAINT EXHIBIT A - 1

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

# FILED

**JUN 26, 2025**

Timothy  W  Fitzgerald
**Spokane CountyClerk**

(Copy Receipt)          Clerk's Date Stamp



| SUPERIOR COURT OF WASHINGTON<br>COUNTY OF SPOKANE | JUDGE RAYMOND F. CLARY 99 |
|---|---|
| SHAHPUR, SELAY  ETAL<br><br>**Plaintiff(s)/Petitioner(s),**<br>**vs.**<br>ULTA BEAUTY INC<br><br>**Defendant(s)/Respondent(s).** | **CASE NO.  25-2-03149-32**<br><br>**CASE ASSIGNMENT NOTICE AND ORDER (NTAS)**<br><br>**CASE STATUS CONFERENCE DATE: SEPTEMBER 26, 2025 AT 8:30 AM** |

## ORDER

YOU ARE HEREBY NOTIFIED that this case is preassigned for all further proceedings to **JUDGE Raymond F. Clary.**

**You are required to attend a Case Status Conference before your assigned judge on the date also noted above.  The Joint Case Status Report must be completed and brought to the Status Conference.  A Case Schedule Order, with the trial date, will be issued at the Status Conference.**

Under the individual calendar system, the court will operate on a four-day trial week.  Trials will commence on Monday, Tuesday, Wednesday or Thursday.  Motion Calendars are held on Friday.  All motions, other than ex parte motions, must be scheduled with the assigned judge.  Counsel must contact the assigned court to schedule motions and working copies of all motion pleadings must be provided to the assigned court at the time of filing with the Clerk of Court.  Pursuant to LCR 40 (b) (9), motions must be confirmed no later than 12:00 noon three days before the hearing by notifying the judicial assistant for the assigned judge.

Please contact the assigned court to schedule matters regarding this case.  You may contact the assigned court by phone, court department e-mail or through the Spokane County Superior Court web page at **https://www.spokanecounty.org/4625/Superior-Court**

DATED: 06/26/2025

MICHELLE D. SZAMBELAN
PRESIDING JUDGE

**NOTICE:  The plaintiff shall serve a copy of the Case Assignment Notice on the defendant(s).**

CASE ASSIGNMENT NOTICE      LAR 0.4.1(b)    (4/2001)    CASGN                    Page 1 of 1

FILED
6/26/2025
Timothy W Fitzgerald
Spokane County Clerk

25-2-03149-32

**CIVIL: Torts**

SPOKANE COUNTY SUPERIOR COURT
Case Information Cover Sheet (CICS)

Case Number_____     Case Title <u>Shahpur v. Ulta Beauty Inc.</u>_____

**Attorney Name** <u>Walter Smith</u>_____     **Bar Membership Number** <u>46695</u>

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

**TORT, MEDICAL MALPRACTICE**
- ☐  MED     Hospital
- ☐  MED     Medical Doctor
- ☐  MED     Other Health Care Professional

**TORT, MOTOR VEHICLE**
- ☐  TMV     Death
- ☐  TMV     Non-Death Injuries
- ☐  TMV     Property Damage Only

**TORT, NON-MOTOR VEHICLE**
- ☑  CPA     Consumer Protection Act
- ☐  MAL     Other Malpractice
- ☐  PIN     Asbestos
- ☐  PIN     Personal Injury
- ☐  PRP     Property Damages
- ☐  TTO     Products Liability
- ☐  VVT     Victims of Motor Vehicle Theft-Civil
- ☐  WDE     Wrongful Death

---

***Please Note: Public information in court files and pleadings may be posted on a public Web site.***

*Last updated: 05/21/2025*

# EXHIBIT C

# Rejection of Service of Process
**Transmittal Number: 31820725**

**Return to Sender Information:**

Walter Smith
Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Ste 205
Olympia, WA 98506

| | |
|---|---|
| **Date:** | 07/14/2025 |
| **Party Served:** | Ulta Beauty, Inc. |
| **Title of Action:** | Selay Shahpur vs. Ulta Beauty, Inc. |
| **Case/Reference No:** | 25-2-03149-32 |

The service of process received for the party served, as listed above, cannot be forwarded to the intended party for the reason listed below.

According to the Secretary of State or other appropriate state agency, the party served is not qualified to do business in the jurisdiction served. CSC is only authorized to receive service of process on behalf of entities that specifically name it as registered/statutory agent within the jurisdiction where service of process occurs. Please review the records at the Secretary of State or other appropriate state agency to identify the proper name within the jurisdiction for the entity you are trying to serve.

Our customer records are confidential. We do not release any information related to our customers, agent representation or service of process received. Please contact the Secretary of State or other appropriate agency for more information.

Many documents received by CSC contain personally identifiable information, which should not be widely disseminated. For this reason, we do not attach PDF images of these documents with our Rejection of Service of Process notifications. For an electronic copy of the identified documents, please send your request by email to sop@cscglobal.com. Please include the transmittal number located in the email body. If the document contains personally identifiable information, CSC will forward an abridged or redacted copy to your attention

251 Little Falls Drive, Wilmington, Delaware 19808-1674
(888) 690-2882 | sop@cscglobal.com