THE HONORABLE JUDGE REBECCA L. PENNELL

MARKUS W. LOUVIER, #39319
STEPHANIE A. CROCKETT, #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; fax: (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com

CRAIG C. MARTIN (admitted *pro hac vice*)
AMANDA S. AMERT (admitted *pro hac vice*)
DEBRA BOGO-ERNST (admitted *pro hac vice*)
MELANIE L. LEE (admitted *pro hac vice*)
300 North LaSalle Dr.
Chicago, Illinois 60654
Tel: (312) 728-9000; fax (312) 728-9199
cmartin@willkie.com
aamert@willkie.com
dernst@willkie.com
mlee@willkie.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ULTA BEAUTY, INC., <br><br> *Defendant*. | Case No. 2:25-cv-284 <br><br> Hon. Rebecca L. Pennell <br><br> **DEFENDANT'S MOTION TO DISMISS** <br><br> 11/24/2025 <br> Without Oral Argument |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

ARGUMENT ..................................................................................... 3

I.     Rule 8 Requires Dismissal of Plaintiffs' Complaint. ......................... 3

II.    Plaintiffs Fail To State a Claim for Both CEMA and CPA Violations
       Under Rule 12(b)(6). ................................................................ 5

   A.   Plaintiffs Fail To Plead the Required Elements of a CEMA Claim. ....... 5

   B.   Plaintiffs Have Not Alleged the Required Elements of a CPA
        Claim. ................................................................................ 6

III.   CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal
       Under Rule 12(b)(6). ............................................................... 8

   A.   CAN-SPAM Preempted CEMA. ................................................. 8

   B.   Express Preemption Forecloses Plaintiffs' CEMA Claims, and
        No Exception Applies. ............................................................ 10

      1.   CAN-SPAM Expressly Preempts CEMA. ................................ 10

      2.   Plaintiffs Cannot Invoke CAN-SPAM's Narrow Express Preemption
           Exception. ...................................................................... 11

      i.    The CEMA Claims Plaintiffs Assert Are Not Grounded in Traditional
            Tort Principles. ............................................................... 11

      ii.   Plaintiffs Have Not Pled the Elements of a Claim Sounding in Tort. . 12

         a.   Plaintiffs Do Not Allege Any Material Misrepresentation. .......... 13

         b.   Plaintiffs Do Not Allege Reliance. .................................... 13

         c.   Plaintiffs Do Not Allege Actual Injury. ............................... 14

         d.   Plaintiffs Do Not Allege Deceptive Intent. ........................... 14

      iii. Plaintiffs Cannot Meet Rule 9(b) Pleading Standards That Apply to
           Fraud Claims. .................................................................. 14

   C.   Conflict Preemption Applies To Bar Plaintiffs' CEMA Claim. ............ 15

IV.    Plaintiffs' Derivative CPA Claim Necessarily Fails. ........................ 18

V.     CEMA Is Unconstitutional Under the Dormant Commerce Clause. ........ 18

CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Target Corp.*,
No. 13-CV-0150, 2013 WL 4734123 (E.D. Wash. July 10, 2013) .............. 6, 8

*Beagle v. Amazon.com, Inc.*,
No. C24-0316JLR, 2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) .......................................................................................... 5

*Bly–Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ......................................................... 15

*Brown v. Old Navy, LLC*,
4 Wn.3d 580, 583–91 .................................................................... 12

*Chao Chen v. Geo Grp., Inc.*,
287 F. Supp. 3d 1158 (W.D. Wash. 2017) ...................................... 8

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ....................................................... 14

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) .......................................................... 10, 15, 17

*Exxon Corp. v. Governor of Md.*,
437 U.S. 117 (1978) ..................................................................... 19

*Geier v. American Honda Motor Co., Inc.*,
529 U.S. 861 (2000) ...................................................................... 15

*Gordon v. First Premier Bank, Inc.*,
No. CV-08-5035-LRS, 2009 WL 5195897 (E.D. Wash. Dec. 21, 2009) ................................................................................... 10, 18

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ............................................. *passim*

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) ..................................................................... 6

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ................................................................. 18, 19

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
    No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27,
    2009) ................................................................................. 12, 13

*Kleffman v. Vonage Holdings Corp.*,
    No. 07-2406, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ........................ 16

*Marts v. U.S. Bank Nat'l Ass'n*,
    166 F. Supp. 3d 1204 (W.D. Wash. 2016), *aff'd sub nom.* 714 F.
    App'x 775 (9th Cir. 2018) ......................................................... 7

*Meyer v. United Healthcare Ins. Co.*,
    840 F. App'x. 174 (9th Cir. 2021) ................................................. 15

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ..................................................... 3

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) .................................................... 19

*Nat'l Collegiate Athletic Ass'n v. Miller*,
    10 F.3d 633 (9th Cir. 1993) ................................................... 19, 20

*Nat'l Pork Producers Council v. Ross*,
    6 F.4th 1021 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023) ...................... 18

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) .................................................... 19

*Sorrel v. Eagle Healthcare, Inc.*,
    110 Wn. App. 290 (2002) .......................................................... 7

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................. 14, 15

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const.*
    *Trades Dep't*,
    911 F. Supp. 2d 1118 (E.D. Wash. 2012), *aff'd sub nom.* 770
    F.3d 834 (9th Cir. 2014) ....................................................... 3, 4

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
    816 F. App'x 64 (9th Cir. 2020) ........................................................ 4

*Westcott v. Wells Fargo Bank, N.A.*, F. Supp. 2d 1111, 1117 (W.D. Wash. 2012) ............................................................................. 12

*Young v. Toyota Motor Sales, U.S.A.*,
    196 Wn.2d 310 (2020) ........................................................ 7

**Statutes**

Controlling the Assault of Non-Solicited Pornography and Marketing Act, 15 U.S.C. §§ 7701–13 ........................................ *passim*

Washington Commercial Electronic Mail Act, RCW 19.190 ..................... *passim*

Washington Consumer Protection Act, RCW 19.86 ..................... *passim*

**Other Authorities**

Rule 8 ........................................................................ 1, 2, 3, 4

Rule 9(b) ........................................................................ 14, 15

Rule 12(b)(6) ........................................................................ *passim*

Rule 21 ........................................................................ 1

U.S. Const. art. VI, cl. 2 ........................................................................ 8

## __INTRODUCTION__

Like many retail companies, Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta Salon")[1] emails discount offers and coupons to its consumers. These promotions often have end dates that Ulta sometimes extends to give consumers additional benefits, and Ulta may mention the end dates or extensions in email subject lines for ease of reference.

Plaintiffs challenge these common email marketing practices—specifically, the subject lines of thirteen promotional emails (Compl., Ex. A)—as false or misleading under the Washington Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("CPA"). Plaintiffs' claims fail for five independently dispositive reasons.

---

[1] Ulta Salon, and not named defendant Ulta Beauty, Inc., is the proper defendant in this case. The parties conferred about the most efficient way to bring this to the Court's attention, and determined that Plaintiffs' Agreed Motion to Add and Drop Parties filed on September 30, 2025 (Dkt. 24), was the best approach. Ulta Beauty, Inc. reserves any and all defenses to Plaintiffs' claims, including that the Court has no personal jurisdiction over Ulta Beauty, Inc. and, to the extent necessary, joins this motion to dismiss in all respects.

DEFENDANT'S MOTION TO DISMISS - page 1

*First*, Plaintiffs' sparse allegations about their own experiences fail to meet even basic Rule 8 pleading requirements. Plaintiff Shahpur claims to have received two distinct Ulta emails. Yet, there is no detail in the Complaint suggesting either email subject line sent to Plaintiff Shahpur, separately or in combination, contained "false or misleading information." RCW 19.190.020(1)(b). And no allegations state that Plaintiff Smith received any particular Ulta email. Without more, Plaintiffs fail to meet Rule 8's basic notice pleading requirements.

*Second*, Plaintiffs fail to plead the elements of their CEMA and CPA claims, and the claims thus should be dismissed under Rule 12(b)(6).

*Third*, Plaintiffs' CEMA claim also fails because it is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"). 15 U.S.C. §§ 7701–13; *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009). Enacted five years after CEMA, CAN-SPAM expressly preempts state laws that regulate commercial emails like CEMA. CAN-SPAM provides for certain limited preemption exceptions, but none apply here. And because CEMA conflicts with CAN-SPAM, conflict preemption also bars Plaintiffs' CEMA claim.

*Fourth*, because Plaintiffs' CPA claim is entirely derivative of their CEMA claim, it fails under Rule 12(b)(6) along with Plaintiffs' preempted CEMA claim.

DEFENDANT'S MOTION TO DISMISS - page 2

*Fifth*, CEMA is facially invalid because it violates the dormant Commerce Clause by controlling commerce beyond Washington and burdening interstate commerce. For these reasons, Plaintiffs' Complaint fails.

## ARGUMENT

**I.    Rule 8 Requires Dismissal of Plaintiffs' Complaint.**

Plaintiffs' sparse allegations about their own experiences do not meet Rule 8's basic pleading requirements. To determine whether Rule 8(a)(2) is satisfied, courts look to the elements of the asserted claim as defined by statute or precedent. *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 911 F. Supp. 2d 1118, 1123 (E.D. Wash. 2012), *aff'd sub nom.* 770 F.3d 834 (9th Cir. 2014). Plaintiffs must satisfy the pleading requirements of Rule 8 *before* discovery. *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (affirming dismissal under Rule 8(a)(2)). This is because Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123.

Here, Plaintiffs provide only bare conclusions. They allege Ulta "bombarded Plaintiffs Shahpur and Smith with commercial emails whose subject lines contain false or misleading statements[.]" Compl. ¶ 69. Yet, Plaintiffs allege only that Plaintiff Shahpur received two Ulta emails with expiration dates—one offering $10 off a $50 purchase or $20 off a $100 purchase and the second

DEFENDANT'S MOTION TO DISMISS - page 3

providing $10 off generally. Compl. ¶¶ 39, 43, 70. Ulta allegedly sent these emails four months apart on October 18, 2024, and February 17, 2025, respectively. *Id.* But Plaintiffs do not detail why either email sent to Plaintiff Shahpur (or both in combination) contained "false or misleading information in the subject line." RCW 19.190.020(1)(b). For example, Plaintiffs do not allege Plaintiff Shahpur received other emails close in time to the two challenged emails, which then purportedly misled them or proved the initial expiration dates were false. Similarly, Plaintiffs do not allege Plaintiff Smith received any Ulta emails aside from an unidentified "$10 off" email at some unspecified time. *Id.* ¶ 70. At best, the Complaint generically discusses a series of emails that purportedly are deceptive (which Ulta denies), but there is no detail as to whether Plaintiffs' experiences follow this pattern. *Id.* ¶¶ 38–57. Without providing these details, Plaintiffs fail to plead deception or misleading content.

Taken together, the few factual statements concerning Plaintiffs' alleged email communications from Ulta are nothing more than the type of blatant "defendant-unlawfully-harmed-me" conclusions prohibited by Rule 8(a)(2). *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123; *see also Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020). Ulta is left guessing as to Plaintiffs' precise experiences. Without more, Plaintiffs cannot "unlock the doors of discovery" and proceed past

DEFENDANT'S MOTION TO DISMISS - page 4

a motion to dismiss. *United Bhd. of Carpenters & Joiners of Am.*, 911 F. Supp. 2d at 1123.

## II.    Plaintiffs Fail To State a Claim for Both CEMA and CPA Violations Under Rule 12(b)(6).

Plaintiffs also fail to plead the elements of both CEMA and CPA.

### A.    Plaintiffs Fail To Plead the Required Elements of a CEMA Claim.

Plaintiffs' sparse allegations about the emails they personally received from Ulta doom their CEMA claim. To state a CEMA claim, Plaintiffs must demonstrate that Ulta initiated, conspired to, or assisted with the transmission of a commercial email, that: (i) "the sender knows, or has reason to know, is held by a Washington resident"; and (ii) contained false or misleading information in the subject line. *Virtumundo*, 575 F.3d at 1057 (RCW 19.190.020(1)). Plaintiffs do not meet this standard.

As to the first element, Plaintiffs hypothesize about how Ulta *potentially* knows that a consumer is a Washington resident, but they say nothing about how Ulta actually knew or had reason to know that Plaintiffs were Washington residents. Compl. ¶¶ 58–68 (speculating that the volume of Ulta's emails *could* touch Washington residents and generically discussing five different ways in which Ulta "*may* obtain location information" without providing any concrete information as to Plaintiffs or putative class members) (emphasis added). Instead,

Plaintiffs simply guess as to Ulta's purported knowledge about consumers' Washington residency. Such speculation cannot support Plaintiffs' claim. *Beagle v. Amazon.com, Inc.*, No. C24-0316JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024).

Plaintiffs also fail to sufficiently allege CEMA's second element that Ulta's emails contained false or misleading information in the subject line. As discussed in Part I *supra*, Plaintiff Shahpur allegedly received two Ulta emails sent four months apart on October 18, 2024, and February 17, 2025, respectively. Compl. ¶¶ 39, 43, 70. Without more context, e.g., a description of additional emails or other facts showing the subject lines were false or misleading, Plaintiffs cannot state a CEMA claim. And there are no specific allegations that Plaintiff Smith received any Ulta emails beyond the vague claim of an unidentified, undated "$10 off" email promotion. *Id.* ¶ 70. At best, the Complaint generically discusses emails that Plaintiffs allege conclusively are deceptive in combination (which Ulta denies), but there is no allegation that the named Plaintiffs received the allegedly deceptive combination of emails. *Id.* As a result, Plaintiffs' CEMA claim fails.

**B.      Plaintiffs Have Not Alleged the Required Elements of a CPA Claim.**

Plaintiffs have not alleged, and cannot allege, a CPA claim. To state a CPA claim, a plaintiff must demonstrate: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) an impact on the public interest; (4) an injury

DEFENDANT'S MOTION TO DISMISS - page 6

to the plaintiff in his business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *Alvarez v. Target Corp.*, No. 13-CV-0150, 2013 WL 4734123, at *6 (E.D. Wash. July 10, 2013). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Marts v. U.S. Bank Nat'l Ass'n*, 166 F. Supp. 3d 1204, 1207–08 (W.D. Wash. 2016), *aff'd sub nom.* 714 F. App'x 775 (9th Cir. 2018) (citing *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298 (2002)). Here, at a minimum, Plaintiffs fail to allege either an unfair or deceptive act or practice or an injury to Plaintiffs. Both failures are independently fatal to their CPA claims.

First, Plaintiffs fail to allege CPA's *unfair or deceptive act or practice* element for the same reasons that they failed to allege an email subject line with *false or misleading information* under CEMA. *See* Part II.A *supra*. Plaintiffs' sparse allegations about Plaintiff Shahpur's receipt of two particular emails and Plaintiff Smith's receipt of one generic email are not sufficient to allege unfairness or deception, requiring dismissal of the CPA claim. *Id.*

Second, Plaintiffs have not alleged injury. Plaintiffs allege only that Ulta's alleged "harassment of Washington consumers with deceptive marketing" caused a false sense of urgency, wasted time, a narrowing of the shopping field, Compl. ¶¶ 4–7, and general harm, *id.* ¶ 34. Plaintiffs fail, however, to allege how they were

harmed and, thus, their CPA claim fails. *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 322 (2020) (upholding CPA dismissal without injury).

Plaintiffs also cannot invent a potential injury based on hypothetical lost "better deals." Compl. ¶ 6. Speculative opportunities are not actionable injuries under the CPA. *See Alvarez*, 2013 WL 4734123, at *7 (declining "to rely on possible injury to Plaintiff's business or property at some undefined point in the future"). Accordingly, Plaintiffs' CPA claim should be dismissed under Rule 12(b)(6).

### III.    CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal Under Rule 12(b)(6).

Plaintiffs' CEMA claim is also preempted by CAN-SPAM. *Virtumundo*, 575 F.3d at 1061; *see also Chao Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017). The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

### A.    CAN-SPAM Preempted CEMA.

Under the Supremacy Clause, CEMA is preempted by CAN-SPAM. As enacted, CEMA broadly prohibited sending, conspiring to send, or assisting in the transmission of a commercial email to an email "address that the sender knows, or

has reason to know, is held by a Washington resident that … contains false or misleading information in the subject line." RCW 19.190.020(1)(b).

Five years after CEMA, Congress passed CAN-SPAM to establish uniform national standards governing commercial email. Congress was specifically concerned with the patchwork of conflicting state laws like CEMA that existed at the time:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, *since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.* 15 U.S.C. § 7701(a)(11) (emphasis added).

Like CEMA, CAN-SPAM regulates commercial email subject lines. CAN-SPAM was specifically intended to address the practice of "purposefully includ[ing] misleading information" in subject lines that does not match the email contents:

> Prohibition of deceptive subject headings. It is unlawful for any person to initiate the transmission … of a commercial [email] … if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to *mislead* a recipient, acting reasonably under the circumstances, *about a material fact* regarding the contents or subject matter of the message.

DEFENDANT'S MOTION TO DISMISS - page 9

15 U.S.C. § 7701(a)(8); *id.* § 7704(a)(2) (emphasis added). Thus, Congress was focused on commercial emails where a subject line is: (i) "likely to mislead a recipient"; (ii) about "a material fact regarding the contents or subject matter of the message"; and (iii) where the sender had "actual knowledge, or knowledge fairly implied on the basis of objective circumstances" of this falsity. *Id.* § 7704(a)(2).

**B.    Express Preemption Forecloses Plaintiffs' CEMA Claims, and No Exception Applies.**

**1.    CAN-SPAM Expressly Preempts CEMA.**

To solve for inconsistent state laws, CAN-SPAM expressly preempts state laws governing commercial emails: "This Act supersedes any statute … of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." *Id.* § 7707(b)(1); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 78–80 (1990) (analyzing express preemption).

Indeed, the Ninth Circuit recognizes that Congress intended CAN-SPAM to "broadly preempt state regulation of commercial e-mail with limited narrow exception" and previously found at least one CEMA provision preempted by CAN-SPAM. *Virtumundo*, 575 F.3d at 1061–64 (finding CAN-SPAM preempted plaintiff's CEMA claim as to deceptive "from lines" on emails); *see also Gordon*

DEFENDANT'S MOTION TO DISMISS - page 10

*v. First Premier Bank, Inc.*, No. CV-08-5035-LRS, 2009 WL 5195897, at *1 (E.D. Wash. Dec. 21, 2009). Thus, Plaintiffs' claims are expressly preempted by CAN-SPAM unless Plaintiffs can show that an exception applies, which they cannot.

### 2.     Plaintiffs Cannot Invoke CAN-SPAM's Narrow Express Preemption Exception.

To the extent that Plaintiffs claim that Congress's "narrow exception" applies to prevent CEMA preemption, they are wrong for two reasons. First, Plaintiffs' CEMA claims are not grounded in traditional tort principles. Second, even if Plaintiffs tried to recast their CEMA claim as a fraud claim to fit within traditional tort principles, their allegations could not meet those pleading requirements.

### i.     The CEMA Claims Plaintiffs Assert Are Not Grounded in Traditional Tort Principles.

CAN-SPAM preempts state laws like CEMA except when those laws "prohibit[] *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1) (emphasis added); *see also id.* § 7707(b)(2) (CAN-SPAM preemption does not apply to "(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime"). The Ninth Circuit held this exception "refers to

'traditionally tortious or wrongful conduct.'" *Virtumundo*, 575 F.3d at 1062 (internal citations omitted).

Here, Plaintiffs' CEMA claims concerning Ulta's email subject lines do not involve traditional tortious or wrongful conduct (which was already remediable when the statute was passed). Rather, CEMA's central purpose was to address the "concern[] about the added cost consumers faced" in 1998 from searching through emails in an era with slow internet and, as a result, "sought to give consumers relief from commercial spam e-mail[.]" *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 583, 590 (2025). Therefore, CEMA's purpose was *not* to remedy intentional torts such as fraud or deception. *See Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (finding CEMA does not require "the elements of common law fraud"). Accordingly, the tortious exception to CAN-SPAM preemption does not apply here.

### ii. Plaintiffs Have Not Pled the Elements of a Claim Sounding in Tort.

Likewise, Plaintiffs cannot rely on fraud or deceit to establish an exception to CAN-SPAM preemption because they have not pled essential elements of these claims: (1) materiality; (2) reliance; (3) actual injury; and (4) deceptive intent. *Westcott v. Wells Fargo Bank, N.A*, 862 F. Supp. 2d 1111, 1117 (W.D. Wash. 2012). Without these elements, Plaintiffs' claims cannot fit within the narrow CAN-SPAM preemption exception.

DEFENDANT'S MOTION TO DISMISS - page 12

### a.    Plaintiffs Do Not Allege Any Material Misrepresentation.

Fraud requires a material misrepresentation, which is not present here. *Virtumundo*, 575 F.3d at 1062. Plaintiffs do not plausibly claim that any allegedly false statement was material to them or any other recipient of the Ulta emails. Plaintiffs have not alleged that Ulta failed to provide any advertised discount, sale price, or other promotion. They mainly allege that sales and promotions lasted longer than advertised in the three email subject lines that they allegedly received. But Plaintiffs fail to allege that email subject lines made a difference in their purchase decisions and so fail to allege any material representations.

### b.    Plaintiffs Do Not Allege Reliance.

Plaintiffs do not allege they relied on any purported misrepresentation in Ulta's email subject lines. Compl. ¶¶ 15, 27. To the contrary, Plaintiffs declare that reliance is irrelevant: "CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line." *Id.* ¶ 27. Plaintiffs allege only that they received false or misleading email subject lines, which "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia*, 2009 WL 10676391, at *4.

### c.      Plaintiffs Do Not Allege Actual Injury.

Plaintiffs also fail to allege a cognizable injury. Although Plaintiffs argue that Ulta purportedly has "bombarded" them with commercial emails that invoke false scarcity, Plaintiffs never actually contend that they have made any purchasing decision based on these three emails, much less that they have suffered actual injury because of these emails. Furthermore, Plaintiffs' claim that they have a "right to be free from [] annoyance and harassment" is not the injury required for fraud or deceit. Compl. ¶ 69; *Virtumundo*, 575 F.3d at 1069.

### d.      Plaintiffs Do Not Allege Deceptive Intent.

Plaintiffs do not plausibly allege that Ulta has acted with deceptive intent. Plaintiffs never suggest Ulta knowingly transmitted false or deceptive information to Washington residents. Compl. ¶¶ 58–68.

*              *              *

Because Plaintiffs fail to allege any of the elements of a traditional tort claim, their claims cannot fit within the narrow preemption exception to CAN-SPAM.

### iii.      Plaintiffs Cannot Meet Rule 9(b) Pleading Standards That Apply to Fraud Claims.

Even if Plaintiffs could somehow transform their CEMA claim into a traditional tort claim (which they cannot), their claim still fails under Rule 9(b). Rule 9(b) imposes heightened requirements for claims alleging fraud or

DEFENDANT'S MOTION TO DISMISS - page 14

misrepresentation and requires a plaintiff to allege fraud with particularity. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal citations omitted). Also, "[t]o comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Swartz*, 476 F.3d at 764 (citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Here, Plaintiffs identify only a handful of promotional subject lines, without alleging who drafted them, how they were false, how any recipient relied on them, and/or how anyone was injured. As a result, Plaintiffs have not provided Ulta with reasonable notice of any particular misconduct that would constitute fraud, much less at the level of specificity required by Rule 9(b). Preemption thus applies.

### C.    Conflict Preemption Applies To Bar Plaintiffs' CEMA Claim.

Conflict preemption independently bars Plaintiffs' CEMA claim. *English*, 496 U.S. at 78–80 (recognizing conflict preemption). Conflict preemption applies where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations omitted); *see also Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000) (recognizing

DEFENDANT'S MOTION TO DISMISS - page 15

that "the savings clause [like express preemption provision] does *not* bar the ordinary working of conflict pre-emption principles") (emphasis in original); *Meyer v. United Healthcare Ins. Co.*, 840 F. App'x. 174, 176 (9th Cir. 2021) (finding express preemption exceptions inapplicable to claims otherwise preempted by conflict preemption).

Congress passed CAN-SPAM as "one national standard applicable across jurisdictions" because "the patchwork of state laws had proven ineffective." *Virtumundo*, 575 F.3d at 1062–63 (cleaned up); *see also* 15 U.S.C. § 7701(a)(11). Likewise, "a single email could instantaneously implicate the laws of multiple jurisdictions. . .before reaching its intended recipient, whose location is often unknown. Therefore, 'one state's Internet laws may impose compliance costs on businesses throughout the country.'" *Virtumundo*, 575 F.3d at 1063 (internal citations omitted). To this end, Congress intended that businesses "would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, No. 07-2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) (concluding that CAN-SPAM preempted California state law claims). As the Ninth Circuit noted:

> It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation.

*Virtumundo*, 575 F.3d at 1063.

DEFENDANT'S MOTION TO DISMISS - page 16

With this lens in mind, CEMA is a significant obstacle to CAN-SPAM's goal "to regulate commercial email 'on a nationwide basis'" and to give businesses certainty. *Virtumundo*, 575 F.3d at 1061 (quoting 15 U.S.C. § 7701(b)(1)). Specifically, CEMA and CAN-SPAM differ in several key respects:

- **Knowledge of Washington Residency (CEMA Requirement):** While CEMA requires the sender's knowledge of the recipient's residency to establish liability, i.e., did the sender know or should it have known that recipient was a Washington resident, CAN-SPAM does not. *Compare* RCW 19.190.020(1) *with* 15 U.S.C. § 7704(a)(2). Indeed, in enacting CAN-SPAM, Congress recognized that it is "extremely difficult for law-abiding businesses to know with which of these disparate [state] statutes they are required to comply" because email addresses "do not specify a geographic location." 15 U.S.C. § 7701(a)(11).

- **Knowledge of Ability To Mislead (CAN-SPAM Requirement):** Unlike CEMA's strict liability framework, CAN-SPAM requires "actual knowledge or knowledge fairly implied on the basis of objective circumstances" as to whether an email subject line would "mislead the recipient, acting reasonably under the circumstances." 15 U.S.C. § 7704(a)(2).

- **Deception About Material Facts (CAN-SPAM Requirement):** CAN-SPAM focuses on deception concerning *material facts*; CEMA does not. CEMA focuses simply on "false or misleading information in the subject line." *Compare* RCW 19.190.020(1)(b) *with* 15 U.S.C. § 7704(a)(2).

- **Punishing More Than Just Sending Email (CEMA Penalty):** Regarding email subject lines, CEMA is broader than CAN-SPAM in that it penalizes sending, conspiring to send, or assisting in the transmission of a commercial email subject line; CAN-SPAM penalizes only sending the email subject line. *Compare* RCW 19.190.020(1) *with* 15 U.S.C. § 7704(a)(2).

CEMA's burdensome requirements impede CAN-SPAM's objective to provide businesses certainty by "regulat[ing] commercial email 'on a nationwide

DEFENDANT'S MOTION TO DISMISS - page 17

basis[.]'" *Virtumundo*, 575 F.3d at 1061 (quoting 15 U.S.C. § 7701(b)(1)). Accordingly, conflict preemption applies, and the Complaint fails under Rule 12(b)(6). *English*, 496 U.S. at 78–80.

## IV. **Plaintiffs' Derivative CPA Claim Necessarily Fails.**

Plaintiffs' CPA claim, which is wholly rooted in the alleged CEMA violations, fails because Plaintiffs' CEMA claim disintegrates due to: (i) failure to allege its elements; and (ii) express and conflict preemption. *See* Parts II.A & III *supra.* Plaintiffs do not allege any independent facts for their CPA claim. Compl. ¶¶ 92–101. Plaintiffs state only that "[a] violation of CEMA is a *per se* violation of the CPA." Compl. ¶ 94. Thus, Plaintiffs' derivative CPA claim should be dismissed. *Virtumundo*, 575 F.3d at 1065; *First Premier Bank*, 2009 WL 5195897, at *2.

## V. **CEMA Is Unconstitutional Under the Dormant Commerce Clause.**

CEMA is "implicitly preempt[ed]" by the dormant Commerce Clause, as it "regulate[s] commerce in a manner that is disruptive to economic activities in the nation as a whole." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021) (internal citations omitted), *aff'd*, 598 U.S. 356 (2023). First, CEMA "directly controls commerce occurring wholly outside" of Washington. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). CEMA imposes liability on any company sending commercial emails to an address that the company "knows, or

DEFENDANT'S MOTION TO DISMISS - page 18

has reason to know, is held by a Washington resident" regardless of the recipient's location at the time they receive the email. RCW 19.190.020(1). For example, Ulta, a company headquartered in Illinois, may email a Washington resident who is away at college in California. This transaction takes place totally outside of Washington, yet CEMA tries to govern it. This is improper and violates the dormant Commerce Clause. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (finding California statute premised on a state residency requirement related to sales violated the dormant Commerce Clause).

Second, CEMA violates the dormant Commerce Clause because it creates "'a lack of national uniformity [which] impede[s] the flow of interstate goods.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 and 1150 (9th Cir. 2012) (citing *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 128 (1978)); *see also Healy*, 491 U.S. at 336–37 ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."). Here, CEMA's subject line requirements for commercial email subject lines impose burdens in states outside of Washington for a minimal local public interest. Companies like Ulta would be forced to investigate regulatory schemes on a state-by-state basis and then eliminate email addresses associated with Washington residents, if that is even possible, to circumvent $500-per-email statutory penalties. This burdensome analysis is

DEFENDANT'S MOTION TO DISMISS - page 19

precisely what CAN-SPAM intended to prevent through the enactment of a nationwide standard. *See* Part III.C *supra*; *Virtumundo*, 575 F.3d at 1063; *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639–40 (9th Cir. 1993) (finding the Nevada statute invalid under the dormant Commerce Clause as it effectively mandated Nevada's regulations nationwide).

Because CEMA presents a "serious risk of inconsistent obligations wrought by the extraterritorial effect of the Statute," it "constitutes a per se violation of the Commerce Clause." *Nat'l Collegiate Athletic Assn*, 10 F.3d at 640. Accordingly, the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

DATED this 3rd day of October, 2025

EVANS, CRAVEN & LACKIE, P.S.

By:    /s/ *Stephanie A. Crockett*
MARKUS W. LOUVIER #39319
STEPHANIE A. CROCKETT #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; fax: (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com

DEFENDANT'S MOTION TO DISMISS - page 20

1
2

WILLKIE FARR & GALLAGHER LLP

3
4

s/ *Craig C. Martin*
CRAIG C. MARTIN (admitted *pro hac vice*)
AMANDA S. AMERT (admitted *pro hac vice*)
DEBRA BOGO-ERNST (admitted *pro hac vice*)
MELANIE L. LEE (admitted *pro hac vice*)
300 North LaSalle Dr.
Chicago, Illinois 60654
Tel: (312) 728-9000; fax: (312) 728-9199
cmartin@willkie.com
aamert@willkie.com
dernst@willkie.com
mlee@willkie.com

*Attorneys for Defendant*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

DEFENDANT'S MOTION TO DISMISS - page 21

# CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Walter Smith, WSBA #46695
Smith & Dietrich Law Office, PLLC
1226 State Avenue, NE., Suite 205
Olympia, WA 98506
walter@smithdietrich.com
*Via ECF*

Lynn A. Toops
Natalie A. Lyons
Ian R. Bensberg
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenmalad.com
ibensberg@cohenmalad.com
*Via ECF*

J. Gerard Stranch, IV
STRANCH, JENNINGS &
GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
*Via ECF*

Samuel J. Strauss
Raina V. Borrelli
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
sam@straussborrelli.com
raina@straussborrelli.com
*Via ECF*

By: */s/ Stephanie A. Crockett*
STEPHANIE A. CROCKETT, WSBA #62797
MARKUS W. LOUVIER, WSBA #39319
*Attorney for Defendant*

DEFENDANT'S MOTION TO DISMISS - page 22