Walter M. Smith
Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952
walter@smithdietrich.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ULTA SALON, COSMETICS & FRAGRANCE, INC., <br><br> Defendant. | Case No.: 2:25-cv-284 <br><br> **AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Selay Shahpur and Lindsey Smith, on their own behalf and on behalf of others similarly situated, on information and belief except to their own experiences and matters of public record, complain of Defendant Ulta Salon, Cosmetics & Fragrance, Inc. (Ulta), as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

1

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.      Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3.      Defendant Ulta engages in the precise activity which CEMA prohibits.

4.      Ulta spams Washington consumers, including Plaintiffs, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5.      This false urgency wastes consumers' time by enticing them to engage with Ulta's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6.      And through this deceptive time-sensitivity, Ulta falsely narrows the field—steering consumers away from shopping for better deals—to its own products which must be purchased *now*.

7.      Plaintiffs challenge Ulta's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

2

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

## II.    JURISDICTION AND VENUE

8.    Defendant has invoked this Court's jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. §§ 1441, 1446, and 1453. *See* ECF No. 1.

9.    Venue is proper in the Eastern District of Washington, under 28 U.S.C. § 1441 because this district and division embrace the place from which Defendant removed this action, Spokane County Superior Court (Case No. 25-2-03149-32).

## III.    PARTIES

10.    Plaintiffs Selay Shahpur and Lindsey Smith are residents of Spokane County, Washington.

11.    Defendant Ulta Salon, Cosmetics & Fragrance, Inc., is a corporation incorporated under the laws of Delaware with its principal place of business in Bolingbrook, Illinois.

## IV.    FACTUAL ALLEGATIONS

### A.    CEMA protects Washington consumers from deceptive spam emails.

12.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13.    In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

complaints." Laws of 1998, ch. 149, § 1.

14.    While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15.    The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16.    In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17.    In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18.    Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19.    Consumers therefore routinely "consent" to receive flurries of

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

4

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

commercial emails which they did not meaningfully request and in which they have no genuine interest.

20.    This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21.    Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22.    The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23.    CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

5

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24.    CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25.    CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26.    CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27.    CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28.    The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

6

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

**B.**    **The subject lines of Ulta's marketing emails make false time scarcity claims.**

29.    One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30.    The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31.    "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

32.    Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021),

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

*available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35.    Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38.    False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

8

39.    These false time scarcity claims are a staple of Ulta's email scheme to corral consumers to purchase its products.

40.    **Urgent Spam Emails.** Ulta is practiced in this trick of luring in consumers through urgent subject headings in emails that do not reflect the true availability of the deal itself, as demonstrated below.

41.    For example, Ulta has deployed its deceptive strategy by extending promotions beyond their advertised end date. A promotion in late 2021 serves as an apt example.

42.    On December 19, 2021, Ulta sent an email titled: "LAST CHANCE: $10 off $40 or $20 off $100!" The body of the email confirmed that the offer would end on December 19 at 11:59 pm. However, the claim made in the email's subject line was untrue.  December 19 was not consumers' "last chance" to participate in the promotion.

43.    Within days, Ulta would return to consumers' inboxes with a December 22, 2021, email demonstrating the falsity of the December 19 warning. The subject line of the message stated: "$10 off $40 and $20 off $100? Extended thru TODAY[.]"

44.    Thus, despite Ulta's December 19, 2021, subject line, consumers had additional time to accept the offer. The "last chance" warning was simply an example of Ulta's deceptive strategy: manufacturing false time pressure meant to drive consumers to its website and, ultimately, the checkout screen. This kind of deception

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

9

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

is particularly effective around the holidays, when consumers are looking for bargains and are perhaps already late in buying gifts.

45.    Ulta deployed its strategy again in December 2022 with additional holiday deception.

46.    On December 19, 2022, Ulta sent a message with the subject line: "ENDS TONIGHT: $10 or $20 off!" The promotion gave consumers two promo codes to use for purchases on Ulta's website. One could be used to take $10 off a $40 purchase, the other took $20 off a $100 purchase.

47.    Later that same day, Ulta leveraged additional pressure against consumers, sending an email titled, "LAST CHANCE on $10 off $40 or $20 off $100 🚨 [,]" to remind them that time to use the discounts was running out. A siren emoji accenting the subject line emphasized the defendant's warning. Even so, December 19 was not the last chance for consumers to participate in the promotion.

48.    On December 20, 2022, Ulta sent consumers an email with the subject line: " 🎁 Gift of TIME: $10 or $20 off, now extended! ⭕ [.]"

49.     Despite warning consumers that the offer "ends tonight" and that December 19 was their "last chance" to participate, Ulta extended the promotion and proved the falsity of its December 19 subject lines. Consumers in receipt of the December 19, 2022, emails were not at risk of missing the deal had they ignored the subject line because Ulta did not end the promotion as advertised.

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

10

50.    The false conclusions of time-limited promotions are simply a marketing strategy meant to compel consumers to purchase Ulta's products.

51.    However, Ulta has not limited its misleading subject lines to promotion extensions. It has also deployed its strategy with other urgent "$10 off" offers.

52.    For example, on February 17, 2025, Ulta sent an email with the subject line, "Say bye to $10 off $50 or $20 off $100! 👋 [,]" indicating that consumers will miss out on the offer if they don't act immediately—as confirmed by the body of the email, which stated "Offer ends Mon, February 17 at 11:59pm CT."

53.    This was not true. On the very next day, February 18, 2025, Ulta issued another email with the subject heading $10 off for you! ❤️ " where the body of the email demonstrated that the "$10 off" deal offered on February 17 was, in fact, available through February 22, 2025.

54.    In another example, on May 10, 2024, Ulta sent an email with the subject line, "[recipient name], your $10 off disappears TOMORROW 😲," indicating that consumers would miss out on this offer if they didn't act immediately—as confirmed by the body of the email, which stated "Offer ends May 11 at 11:59pm CT."

55.    But this offer didn't "disappear." In fact, it was regularly available in May 2024. Ulta sent an email a few days later, on May 24, 2024, with the subject heading: "$10 off in store or online?! We're in." The following week, on May 31,

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

11

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

2024, it sent another email to consumers using the subject line: "🤩 Just for you, —

! Claim your $10 OFF now 🤩." The content of both emails stated, in fine print,

"Offer ends June 1 at 11:59pm CT."

56.    Later that same year, Ulta pummeled consumers with an email on

Friday, October 18, 2024, including the urgent subject heading: "Your $10 off

expires Saturday! 💎 [.]"

57.    But in that same month, on October 29, 2024, Ulta sent another email

with the subject line, "$10 OFF just landed in your beauty bag." That offer was

"valid through 11.23.24."

58.    As the October 29, 2024, email demonstrates, the expiration dates and

deadlines that Ulta leverages against consumers, including the one referenced in the

October 18 subject line, are completely contrived.

59.    Ulta orchestrated another deception in 2022. On March 4, 2022, it sent

an email titled: "See you later, $10 off[.]" The warning in the subject line was clear.

Consumers needed to act fast to participate in the promotion. Even so, the email

informed consumers there was only "2 days left" of the offer. The email's subject

line communicates urgency to the receiving consumer and indicates that the

promotion will not last.

60.    Rather than "see you later," a more honest title for Ulta's March 4 email

would have been, "See you soon…very soon."

12

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

61.    Within the same month, on March 25, 2022, Ulta would return to consumers' inboxes with a $10 offer. The email's subject line stated: "[recipient's name], here's $10 off on us!" As the March 25 email demonstrated, the March 4, 2022, email was deceptive.

62.    Then, in May, Ulta recycled the strategy along with the misleading subject line. On May 5, 2022, Ulta transmitted an email to consumers with the title: "See you later, $10 off[.]"

63.    Later the same month, on May 26, 2022, Ulta was advertising the offer to consumers yet again in an email titled: "$10 off anything you want[.]" Thus, consumers were not in jeopardy of missing out on the offer, despite the warnings and urgency communicated in Ulta's subject lines.

64.    Indeed, Ulta frequently offers the "$10 off" deal throughout a given year, using different kinds of deceptive language to communicate to the consumer that the deal is fleeting, though it is not. In 2023, for example, it advertised the deal in the following emails and subject lines:

    a.  1/20/23: "Psst: $10 off for you ⬇️ "

    b.  2/24/23: "$10 off—yes, includes prestige & fragrance! 🛍️ "

    c.  3/24/23: "Get $10 off inside 💌 "

    d.  4/25/23: "LAST CALL: $10 off $40"

    e.  5/5/23: "LAST CHANCE: Get $10 off inside 💗 💄 "

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

13

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

f. 6/13/23: "YES WAY 👏 $10 off, including prestige & fragrance"

g. 7/7/23: "$10 off is allll yours 💓 🥳 "

h. 8/18/23: "Get to hauling! 🏃 $10 off inside 👇 "

i. 9/8/23: "Start shopping because here's $10 OFF!"

j. 10/7/23: "TWO. MORE. DAYS. Get $10 off 💓 🛍️ "

k. 11/3/23: "How does $10 OFF sound? 😍 "

l. 12/9/23: " 🎁 $10 OFF 🎁 $20 OFF 🎁 "

65.    In addition to the May and October examples discussed above, Ulta also sent emails offering "$10 off" on multiple occasions in 2024, as demonstrated in the following subject lines. While these titles employ various warnings and emojis, the same deceptive strategy is at work – conforming the email to whatever holiday is closest (hearts in late January, closest to Valentine's day), indicating that the promotion is ephemeral when that is not true, and emphasizing that the consumer must act quickly in some fashion to gain the benefit of the deal.

a. 1/26/24: "Don't forget 💗 $10 OFF including prestige & fragrance 💗 "

b. 2/29/24: " ⚠️ $10 off ⚠️ Includes prestige & fragrance!"

c. 3/3/24: "HOURS LEFT 💓 $10 or $20 OFF 💓 "

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

14

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

d. 4/23/24: "🧒 OMG $10 off $50?? Yes, please 🧒"

e. 7/8/24: "FINAL DAY ⏱ $10 off $50 or $20 off $50"

f. 8/23/24: "Say bye 👋 to your $10 OFF tomorrow…"

g. 9/6/24: "Here's $10 to add something to your 🛍"

h. 11/28/24: "$10 off + TONS of new deals!"

i. 12/2/24: "⚠️ LAST CHANCE: Cyber Monday deals + $10 off + FREE

66.   True to form, Ulta has continued this same deceptive pattern in 2025. In addition to the February subject line discussed above Ulta offered the "$10 off" deal in the following emails as well:

a. 1/24/25: "Say bye to your $10 OFF tomorrow… 👋"

b. 3/21/25: "⚠️ FYI: Your $10 off expires tomorrow! ⚠️"

c. 5/22/25: "[email recipient], get $10 or $20 off your purchase 😎"

67.   This persistent pattern of offering $10 off belies Ulta's repeated and deceptive assertions that the offer will "disappear" or that a consumer must "say bye" to such offers. In fact, the offer regenerates repeatedly from month to month to month. The offer is simply repeated, repackaged, and redeployed. While the language may vary, the same strategy is maintained: trying to convince the consumer that they must act quickly, lest they lose the deal.

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

15

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

68.    Ulta uses deception in other promotions as well, as demonstrated by subject lines advertising its "50% off" deals.

69.    For example, on March 27, 2025, Ulta sent an email to consumers, stating in the subject heading: "LAST DAY! 50% off Beauty Steals ❤️ [.]"

70.    Later that same day, Ulta ratcheted up the time pressure by sending consumers an email titled, "LAST CHANCE—50% off Beauty Steals ends today!"

71.    But March 27 was not the "last day" nor the "last chance" for this 50% off deal.

72.    On March 28, Ulta sent another email that invoked the same urgency in the subject line: " ⏰ LAST CHANCE 50% OFF Beauty Steals."

73.    Thus, the March 28, 2025, email confirms that the March 27 subject lines, and the urgency they fostered, were misleading.

74.    In another example, on March 23, 2024, Ulta repeated its pattern, sending an email with the subject heading: " ⚠️ LAST CHANCE ⚠️ Get 50% off Beauty Steals!" The capital letters and the triangular exclamation mark emoji heighten the urgency of the subject line. But, in fact, the deal was offered through March 28, 2024.

75.    And consumers had yet another "chance" at this deal just days later, on April 9, 2024, when Ulta sent an email, offering in the subject line: "IT'S BACK! Up to 50% off during SPRING HAUL ❤️ [.]"

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

16

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

76.     Yet another example of the defendant's misleading strategy came in July 2024. At that time, Ulta deceptively marketed a 10% off promotion.

77.     On July 21, 2024, Ulta sent consumers an email with the heading: "LAST DAY to get 10% off."

78.     Yet, just four days later, on July 25, 2024, it ran a *better deal* that equated to 20% off (*i.e.* $20 off $100 and $10 off $50).

79.     Similarly, on November 4, 2023, Ulta ran an email campaign with the subject heading, "ENDS TODAY Up to 40% off makeup"—a "40% off" deal Ulta ran again on November 11, 2023.

80.     These and other examples of Ulta's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.     Ulta knows when it sends marketing emails to addresses held by Washington residents.**

81.     A sophisticated commercial enterprise, like Ulta, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

82.     First, the sheer volume of email marketing that Ulta engages in put it on notice that Washington residents would receive its emails. Since 2021, Ulta has been sending marketing emails at a rate averaging (at least) 400 per year, 30 per

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

17

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

month, and 1 per day.

83.     Second, Ulta may obtain location information tied to email addresses when consumers make purchases from Ulta through digital platforms, including Ulta's website, or otherwise self-report such information to Ulta.

84.     Third, Ulta may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Ulta's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

85.     Specifically, Ulta appears to use Salesforce Marketing Cloud to manage its email marketing campaigns. This platform allows Ulta to identify anyone who receives its marketing emails, determine who opens them, and track who clicks on any links within them.

86.     Ulta is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

87.     Fourth, Ulta may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

88.     Fifth, Ulta may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

18

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

can connect consumers' email addresses to their physical locations, among other identifiers.

89.    Sixth, Ulta may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

90.    Finally, Ulta can also learn the residency of the consumers it sells to when they place orders on its website that ship to a certain state, or when a consumer creates an account with Ulta and must provide their state or location to do so.

91.    It is thus highly probable that a seller of Ulta's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level, and that Ulta knows when it sends marketing emails to Washington residents.

**D.    Ulta has violated Plaintiffs' right under CEMA to be free from deceptive commercial emails.**

92.    Ulta has spammed Plaintiffs Shahpur and Smith with commercial emails whose subject lines contain false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.

93.    Both plaintiffs received "$10 off" email promotions as described above in Section B. Specifically, Plaintiff Shahpur received the February 17, 2025, email, "Say bye to $10 off $50 or $20 off $100! 👋 " email and the October 18, 2024, email,

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

19

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

"Your $10 off expires Saturday! 💸 [.]" Plaintiff Smith received the October 7, 2023,

email titled: "TWO. MORE. DAYS. Get $10 off 💖 🛍️ [.]"

94.    These emails were false or misleading in violation of CEMA, for

misrepresenting the availability and timing of deals, as described herein.

95.    These email subject lines contained false statements of fact as to the

"duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.    CLASS ALLEGATIONS

96.    Plaintiffs bring this action under Civil Rule 23 on behalf of the

following putative class ("Class"):

> All Washington citizens holding an email address to which
> Defendant sent or caused to be sent any email listed in
> Exhibit A during the Class Period.

97.    Excluded from the Class are Defendant's officers, directors, and

employees; Defendant's parents, subsidiaries, affiliates, and any entity in which

Defendant has a controlling interest; undersigned counsel for Plaintiffs; and all

judges and court staff to whom this action may be assigned, as well as their

immediate family members.

98.    The Class Period extends from the date four years before Plaintiffs'

initial Class Action Complaint was filed to the date a class certification order is

entered in this action.

99.    Plaintiffs reserve the right to amend the Class definition as discovery

AMENDED CLASS ACTION
COMPLAINT
No. 2:25-cv-284

20

reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

100.    The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

101.    There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

102.    Plaintiffs' claims are typical of the Class's because, among other reasons, Plaintiffs and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

103.    Plaintiffs will fairly and adequately protect the Class's interests because, among other reasons, Plaintiffs share the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

21

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

and class action litigation.

104.   Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiffs and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiffs and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

105.   The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

106.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class action presents no special difficulties.

## VI.   CLAIMS TO RELIEF

### First Claim to Relief
### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

107.   Plaintiffs incorporate and reallege paragraphs 1–95 above.

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

22

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

108.  CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

109.  Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

110.  Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

111.  Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiffs and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

112.  Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

23

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

CEMA. RCW 19.190.020(1)(b).

113.   For Defendant's violation of CEMA, Plaintiffs are entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**
**Violation of the Consumer Protection Act, RCW 19.86.020**

114.   Plaintiff incorporates and realleges paragraphs 1–95 above.

115.   The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

116.   A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

117.   A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

118.   CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

119.   Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

120.   Defendant initiated the transmission, conspired with another to initiate

the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

121.   Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

122.   Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

123.   For Defendant's violation of the CPA, Plaintiffs and putative members are entitled to an injunction against further violations; the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including reasonable attorneys' fees.

## VII.   JURY DEMAND

124.   Plaintiffs demand a jury trial on all issues so triable.

## VIII.   PRAYER FOR RELIEF

Plaintiffs asks that the Court:

A.   Certify the proposed Class, appoint Plaintiffs as Class representative, and appoint undersigned counsel as Class counsel;

B.      Enter a judgment in Plaintiffs' and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C.      Enter a judgment in Plaintiffs' and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D.      Award Plaintiffs costs of suit, including reasonable attorneys' fees; and

E.      Order such further relief the Court finds appropriate.

DATE: October 23, 2025                    Respectfully submitted,
                                          /s/ Walter Smith
                                          Walter M. Smith
                                          **Smith & Dietrich Law Offices,
                                          PLLC**
                                          1226 State Avenue NE, Suite 205
                                          Olympia, WA 98506
                                          Tel.: (360) 915-6952
                                          walter@smithdietrich.com

                                          Lynn A. Toops*
                                          Natalie A. Lyons*
                                          Ian R. Bensberg*
                                          **CohenMalad, LLP**
                                          One Indiana Square, Suite 1400
                                          Indianapolis, IN 46204
                                          Tel.: (317) 636-6481
                                          ltoops@cohenmalad.com
                                          nlyons@cohenmalad.com
                                          ibensberg@cohenmalad.com

AMENDED CLASS ACTION
COMPLAINT                    26
No. 2:25-cv-284

**Smith & Dietrich Law Offices PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592

J. Gerard Stranch, IV*
Michael C. Tackeff*
Andrew Murrary*
**Stranch, Jennings & Garvey, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

Samuel J. Strauss
**Strauss Borrelli, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com


*Attorneys for Plaintiffs*
* Admitted *pro hac vice*

AMENDED CLASS ACTION COMPLAINT
No. 2:25-cv-284

27

Smith & Dietrich Law Offices PLLC
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6592