THE HONORABLE REBECCA L. PENNELL

MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201
Tel: (509) 455-5200; Fax: (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com

CRAIG C. MARTIN (admitted *pro hac vice*)
AMANDA S. AMERT (admitted *pro hac vice*)
DEBRA BOGO-ERNST (admitted *pro hac vice*)
MELANIE L. LEE (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
300 North LaSalle Drive
Chicago, IL 60654
Tel: (312) 728-9000; Fax: (312) 728-9199
cmartin@willkie.com
aamert@willkie.com
dernst@willkie.com
mlee@willkie.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,<br><br>   *Plaintiffs*,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>   *Defendant*. | No. 2:25-cv-284-RLP<br><br>Hon. Rebecca L. Pennell<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**<br><br>January 26, 2026<br>Without Oral Argument |



1

## <u>TABLE OF CONTENTS</u>

ARGUMENT ............................................................................................. 3

I.    Rule 8 Requires Dismissal of Plaintiffs' Amended Complaint. ................. 3

II.   Plaintiffs Fail to State a Claim for Both CEMA and CPA Violations Under
      Rule 12(b)(6). ..................................................................................... 5

A.    Plaintiffs Fail to Plead the Required Elements of a CEMA Claim. .......... 5

B.    Plaintiffs Fail to Plead the Required Elements of a CPA Claim. ............. 6

III.  CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal
      Under Rule 12(b)(6). ........................................................................... 8

A.    Express Preemption Forecloses Plaintiffs' CEMA Claims, and
      No Exception Applies. ......................................................................... 10

  1.    CAN-SPAM Expressly Preempts CEMA. .......................................... 10

  2.    Plaintiffs Cannot Invoke CAN-SPAM's Narrow Express Preemption
        Exception. ......................................................................................... 11

    i.    The CEMA Claims Plaintiffs Assert Are Not Grounded in Traditional
          Tort Principles. ................................................................................. 11

    ii.   Plaintiffs Fail to Plead the Elements of a Claim Sounding in Tort. ...... 12

    iii.  Plaintiffs Cannot Meet the Rule 9(b) Pleading Standards That Apply to
          Fraud Claims. ................................................................................... 14

B.    Conflict Preemption Applies to Bar Plaintiffs' CEMA Claim. ............. 15

IV.   Plaintiffs' Derivative CPA Claim Necessarily Fails. ............................... 18

V.    CEMA Is Unconstitutional Under the Dormant Commerce Clause. ........ 18

CONCLUSION ....................................................................................... 20



# **INTRODUCTION**

Like many retailers, Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") emails discount offers and coupons to its customers. These promotions often have end dates that Ulta sometimes extends to give consumers additional benefits, and Ulta may mention the end dates or extensions in email subject lines for ease of reference. Plaintiffs' Amended Class Action Complaint ("AC" or "Amended Complaint") challenges these commonplace marketing practices—specifically, the subject lines of 21 promotional emails (ECF No. 32-1)—as false or misleading under the Washington Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("CPA"). As with their original Complaint (ECF No. 1 at 28–40), Plaintiffs' claims fail for five independently dispositive reasons.

*First*, Plaintiffs' sparse allegations about their own experiences fail to meet even Rule 8 pleading requirements.

*Second*, Plaintiffs fail to plead the elements of their CEMA and CPA claims, and the claims thus should be dismissed under Rule 12(b)(6).

*Third*, Plaintiffs' CEMA claim also fails because it is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"). 15 U.S.C. §§ 7701–7713; *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1059–64 (9th Cir. 2009). Enacted after CEMA, CAN-SPAM expressly



EVANS, CRAVEN
& LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

preempts state laws like CEMA that regulate commercial emails, subject to limited exceptions not applicable here. And because CEMA conflicts with CAN-SPAM, conflict preemption also bars Plaintiffs' CEMA claim.

*Fourth*, because Plaintiffs' CPA claim is entirely derivative of their CEMA claim, it fails under Rule 12(b)(6) along with Plaintiffs' preempted CEMA claim.

*Fifth*, CEMA is facially invalid because it violates the dormant Commerce Clause by controlling commerce beyond Washington and burdening interstate commerce. For these reasons, Plaintiffs' Amended Complaint fails.

Ulta identified many of these deficiencies in its Motion to Dismiss the original complaint. *See* ECF No. 26. Plaintiffs' limited amendments, which add only non-substantive allegations and a longer list of email subject lines, fail to fix these problems. Even when viewed in the light most favorable to Plaintiffs, Plaintiffs' amendments do not address their substantive pleading deficiencies. Accordingly, the Amended Complaint should be dismissed with prejudice.[1]

---

[1] Failure to cure deficiencies in an amended complaint is grounds for dismissal with prejudice. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988) (affirming district court ruling refusing to allow another amended complaint where plaintiffs had failed to cure deficiencies).

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT - PAGE 2

**EVANS, CRAVEN & LACKIE, P.S.**
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

# ARGUMENT

## I.     Rule 8 Requires Dismissal of Plaintiffs' Amended Complaint.

Plaintiffs' sparse and conclusory allegations about their own experiences in the Amended Complaint do not meet Rule 8's basic pleading requirements. To determine whether Rule 8(a)(2) is satisfied, courts look to whether a plaintiff has alleged the elements of the asserted claim as defined by statute or precedent. *United Bhd. of Carpenters & Joiners v. Bldg. & Constr. Trades Dep't*, 911 F. Supp. 2d 1118, 1123 (E.D. Wash. 2012), *aff'd*, 770 F.3d 834 (9th Cir. 2014). Plaintiffs must meet the Rule 8 standard *before discovery*; Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123; *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (affirming dismissal under Rule 8(a)(2)).

As with their other claims, Plaintiffs provide only bare conclusions. They assert that Ulta "spammed Plaintiffs Shahpur and Smith with commercial emails whose subject lines contain false or misleading statements[.]" AC ¶ 92. Yet Plaintiffs identify only two emails to Plaintiff Shahpur—one offering $10 off a $50 purchase or $20 off a $100 purchase and the second providing $10 off generally—sent four months apart on October 18, 2024, and February 17, 2025, respectively. *Id.* ¶ 93. In their Amended Complaint, Plaintiffs now add only that Plaintiff Smith received one Ulta email offering $10 off with an expiration date, sent on October 7,



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

2023. *Id.* Nowhere do Plaintiffs allege facts explaining how the subject line of any of these emails was "false or misleading." Wash. Rev. Code § 19.190.020(1)(b). For example, Plaintiffs do not allege Plaintiff Shahpur received additional, temporally proximate emails that contradicted the stated expiration dates or otherwise rendered the subject lines false. Similarly, Plaintiffs allege only that Plaintiff Smith received one "$10 off" email but make no mention of any facts suggesting that the expiration date it referenced was false. AC ¶ 93. The Amended Complaint now recites a laundry list of alleged "$10 off" emails Ulta purportedly sent over the years, *id.* ¶¶ 42–66, and generically discusses a longer series of emails that purportedly are deceptive (which Ulta denies), but there is no allegation that Plaintiffs received those emails. *Id.* ¶¶ 29–80. Without providing these details, Plaintiffs fail to plead they were subject to deception or misleading content.

Taken together, the few factual statements concerning Plaintiffs' alleged email communications from Ulta are just the type of blatant "defendant-unlawfully-harmed-me accusations" prohibited by Rule 8(a)(2) because they leave Ulta guessing at Plaintiffs' precise experiences. *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123; *see also Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020). Without more, Plaintiffs cannot "unlock the doors of discovery" and proceed past a motion to dismiss. *United Bhd. of Carpenters*, 911 F. Supp. 2d at 1123. For these reasons, the Amended

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

Complaint should be dismissed with prejudice because Plaintiffs have shown they cannot correct these fatal flaws.

## II.    Plaintiffs Fail to State a Claim for Both CEMA and CPA Violations Under Rule 12(b)(6).

Plaintiffs also fail to plead the elements of both CEMA and CPA.

### A.    Plaintiffs Fail to Plead the Required Elements of a CEMA Claim.

Plaintiffs' sparse allegations about the few emails they personally received from Ulta doom their CEMA claim. To state a CEMA claim, Plaintiffs must demonstrate that Ulta initiated, conspired to initiate, or assisted with the transmission of a commercial email, that: (i) "the sender knows, or has reason to know, is held by a Washington resident"; and (ii) contained false or misleading information in the subject line. *Virtumundo*, 575 F.3d at 1057 (citing Wash. Rev. Code § 19.190.020(1)). Plaintiffs do not meet this standard.

As to the first element, Plaintiffs hypothesize about how Ulta *potentially* knows that a consumer is a Washington resident, but they say nothing about how Ulta actually knew or had reason to know that either Plaintiff was a Washington resident. AC ¶¶ 81–91 (speculating that the volume of Ulta's emails *could* touch Washington residents and generically listing seven hypothetical ways in which Ulta "*may* obtain location information," without providing any concrete allegations as to Plaintiffs or putative class members) (emphasis added). Their conjecture that it is "highly probable" Ulta knew Plaintiffs' residences is just conjecture, not a factual



EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

basis for a plausible claim. *Id.* ¶ 91. Such speculation cannot support Plaintiffs' claim. *See Beagle v. Amazon.com, Inc.*, No. C24-0316JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024).

Plaintiffs also fail to sufficiently allege CEMA's second element—that Ulta sent subject lines with any false or misleading information. Plaintiff Shahpur allegedly received two Ulta emails sent four months apart, on October 18, 2024, and February 17, 2025. AC ¶ 93. Without more context, e.g., a description of additional emails or other facts showing that the subject lines were false or misleading, that does not state a CEMA claim. Plaintiffs' new allegation that Plaintiff Smith received a singular Ulta email on October 7, 2023, adds nothing meaningful to cure these deficiencies. *Id.* At best, the Amended Complaint describes, in the abstract, an allegedly potentially deceptive combination of emails (which Ulta denies) sent to someone, but it does not allege that either named Plaintiff (or any other single recipient) actually received that combination. *Id.* As a result, Plaintiffs' CEMA claim fails.

### B.   Plaintiffs Fail to Plead the Required Elements of a CPA Claim.

Plaintiffs have not alleged, and cannot allege, a CPA claim. To state a CPA claim, a plaintiff must demonstrate: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) an impact on the public interest; (4) an injury to the plaintiff in his business or property; and (5) causation. *See Hangman Ridge*

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

*Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986) (en banc); *Alvarez v. Target Corp.*, No. 13-CV-0150, 2013 WL 4734123, at *6 (E.D. Wash. July 10, 2013). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Marts v. U.S. Bank Nat'l Ass'n*, 166 F. Supp. 3d 1204, 1207–08 (W.D. Wash. 2016), *aff'd sub nom.*, 714 F. App'x 775 (9th Cir. 2018) (citing *Sorrel v. Eagle Healthcare, Inc.*, 110 Wash. App. 290, 298 (2002)). Here, at a minimum, Plaintiffs fail to allege either an unfair or deceptive act or practice or an injury to Plaintiffs. Both failures are independently fatal to their CPA claim.

First, Plaintiffs fail to allege CPA's *unfair or deceptive act or practice* element for the same reasons that they failed to allege an email subject line with *false or misleading information* under CEMA. *See* Part II.A *supra*. Plaintiffs' sparse allegations about Plaintiff Shahpur's receipt of two emails four months apart, and Plaintiff Smith's receipt of one generic email, are not sufficient to allege unfairness or deception, requiring dismissal of the CPA claim. *Id.*

Second, Plaintiffs have not alleged injury. Plaintiffs allege only that Ulta's alleged "harassment of Washington consumers with deceptive marketing" caused a false sense of urgency, wasted time, a narrowing of the shopping field, AC ¶¶ 4–7, and general harm "to their detriment—and the seller's benefit," *id.* ¶ 36 (emphasis omitted). Plaintiffs fail, however, to allege how they were harmed, and thus, their CPA claim fails. *Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 320–22



(2020) (upholding CPA dismissal without injury). Indeed, just this week, this Court dismissed a similar CPA claim for lack of a concrete injury. *Montes v. Catalyst Brands LLC*, No. 2:25-cv-00281, 2025 WL 3485827, at *9 (E.D. Wash. Dec. 4, 2025), Ex. A (holding that, absent allegations that email subject lines were unsolicited or unwanted, plaintiff failed to allege an injury that would "constitute a concrete harm").

Plaintiffs also cannot invent a potential injury based on hypothetical lost "better deals." AC ¶ 6. Speculative opportunities are not actionable injuries under the CPA. *See Alvarez*, 2013 WL 4734123, at *7 (declining "to rely on *possible* injury to Plaintiff's . . . at some undefined point in the future"). Accordingly, Plaintiffs' CPA claim should be dismissed under Rule 12(b)(6).

## III.    CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal Under Rule 12(b)(6).

Plaintiffs' CEMA claim is also preempted by CAN-SPAM. *Virtumundo*, 575 F.3d at 1061; *see also Chao Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017) (discussing preemption doctrine). The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, CEMA is preempted by CAN-SPAM. As enacted, CEMA broadly prohibited sending, conspiring to send, or assisting in the transmission of a commercial email to an

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

email "address that the sender knows, or has reason to know, is held by a Washington resident that . . . contains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b).

Five years after CEMA, Congress passed CAN-SPAM to establish uniform national standards governing commercial email. Congress was concerned with the patchwork of conflicting state laws like CEMA that existed at the time:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, *since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.*

15 U.S.C. § 7701(a)(11) (emphasis added).

Like CEMA, CAN-SPAM regulates commercial email subject lines. CAN-SPAM intended to address the practice of "purposefully includ[ing] misleading information" in subject lines that does not match the email contents:

> Prohibition of deceptive subject headings. It is unlawful for any person to initiate the transmission . . . of a commercial [email] . . . if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to *mislead* a recipient, acting reasonably under the circumstances, *about a material fact* regarding the contents or subject matter of the message . . . .

15 U.S.C. § 7701(a)(8); *id.* § 7704(a)(2) (emphasis added). Thus, Congress was focused on commercial emails where a subject line is: (i) "likely to mislead a

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

recipient"; (ii) about "a material fact regarding the contents or subject matter of the message"; and (iii) where the sender had "actual knowledge, or knowledge fairly implied on the basis of objective circumstances" of this falsity. *Id.* § 7704(a)(2).

### A. Express Preemption Forecloses Plaintiffs' CEMA Claims, and No Exception Applies.

#### 1. CAN-SPAM Expressly Preempts CEMA.

To address inconsistencies across state laws, CAN-SPAM expressly preempts state laws governing commercial emails: "This [Act] supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." *Id.* § 7707(b)(1); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 78–80 (1990) (analyzing express preemption).

Indeed, the Ninth Circuit recognizes that Congress intended CAN-SPAM to "broadly preempt state regulation of commercial e-mail with limited, narrow exception" and previously found at least one CEMA provision preempted by CAN-SPAM. *Virtumundo*, 575 F.3d at 1059–64 (finding CAN-SPAM preempted plaintiff's CEMA claim as to deceptive "from lines" on emails); *see also Gordon v. First Premier Bank, Inc.*, No. CV-08-5035, 2009 WL 5195897, at *1–*2 (E.D. Wash. Dec. 21, 2009). Thus, Plaintiffs' claims are expressly preempted by CAN-SPAM unless Plaintiffs can show that an exception applies; they cannot do so.



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

### 2.  Plaintiffs Cannot Invoke CAN-SPAM's Narrow Express Preemption Exception.

Congress's "narrow exception" does not save CEMA from preemption for two reasons. First, Plaintiffs' CEMA claims are not grounded in traditional tort principles. Second, Plaintiffs cannot recast their CEMA claim as a fraud claim within traditional tort principles because their allegations do not meet the heightened pleading standard for such claims.

### i.  The CEMA Claims Plaintiffs Assert Are Not Grounded in Traditional Tort Principles.

CAN-SPAM preempts state laws like CEMA except when those laws "prohibit[] *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1) (emphasis added); *see also id.* § 7707(b)(2) (CAN-SPAM preemption does not apply to "(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime"). The Ninth Circuit has held that this exception "refers to 'traditionally tortious or wrongful conduct.'" *Virtumundo*, 575 F.3d at 1062 (citation omitted).

Here, Plaintiffs' CEMA claims concerning Ulta's email subject lines do not involve traditional tortious or wrongful conduct (which was already remediable when the statute was passed). Rather, CEMA's central purpose was to address the

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

"concern[] about the added cost consumers faced" in 1998 from searching through emails in an era with slow internet and, as a result, "sought to give consumers relief from commercial spam e-mail[.]" *Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 583, 590 (2025) (en banc). Therefore, CEMA's purpose was *not* to remedy intentional torts such as fraud or deception. *See Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (finding CEMA does not require "the elements of common law fraud"). Accordingly, the tortious exception to CAN-SPAM preemption does not apply.

### ii. Plaintiffs Fail to Plead the Elements of a Claim Sounding in Tort.

Likewise, Plaintiffs cannot rely on fraud or deceit to establish an exception to CAN-SPAM preemption because they have not pled the essential elements of these claims: (1) a material misrepresentation; (2) reliance; (3) actual injury; and (4) deceptive intent. *See Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1117 (W.D. Wash. 2012). Without these elements, Plaintiffs' claims cannot fit within the narrow CAN-SPAM preemption exception.

***Plaintiffs Do Not Allege Any Material Misrepresentation***. Fraud requires a material misrepresentation. *See Virtumundo*, 575 F.3d at 1062. There is none alleged here. Plaintiffs do not plausibly claim that any allegedly false statement was material to them or any other recipient of the Ulta emails. Plaintiffs have not alleged that Ulta failed to provide any advertised discount, sale price, or other promotion.



They mainly allege that sales and promotions lasted longer than advertised in the three email subject lines that they allegedly received. But Plaintiffs fail to allege that email subject lines made a difference in their purchase decisions and so fail to allege any material misrepresentations.

**Plaintiffs Do Not Allege Reliance**. Plaintiffs do not allege they relied on any purported misrepresentation in Ulta's email subject lines. AC ¶¶ 15, 27. Instead, Plaintiffs declare that reliance is irrelevant: "CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line." *Id.* ¶ 27. Plaintiffs allege only that they received false or misleading email subject lines, which "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia*, 2009 WL 10676391, at *4.

**Plaintiffs Do Not Allege Actual Injury**. Plaintiffs fail to allege a cognizable injury. They claim Ulta "spammed" them with commercial emails that invoke false scarcity, but neither Plaintiff alleges any purchase decision (or any actual harm) stemming from these three emails. Plaintiffs' reliance on *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019); AC ¶ 23, is misplaced: this Court recently declined to follow *Harbers*, holding that CEMA confers no substantive right and that "the mere receipt of misleading or false subject lines in emails does not, by itself, constitute an injury." *Montes*, 2025 WL 3485827 at *7–

*8, Ex. A. Because "[h]arm is an essential element of any tort claim," Plaintiffs cannot invoke the narrow CAN-SPAM preemption exception. *Id.* at 7 (internal citations omitted). And Plaintiffs' asserted "right to be free from [] annoyance and harassment" is not the injury required for fraud or deceit. AC ¶ 92; *Virtumundo*, 575 F.3d at 1062.

**Plaintiffs Do Not Allege Deceptive Intent**. Plaintiffs do not plausibly allege that Ulta has acted with deceptive intent. Plaintiffs never suggest Ulta knowingly transmitted false or deceptive information to Washington residents. AC ¶¶ 81–91.

Because Plaintiffs fail to allege any element of a traditional tort claim, their claims cannot fit within the narrow preemption exception to CAN-SPAM.

### iii. Plaintiffs Cannot Meet the Rule 9(b) Pleading Standards That Apply to Fraud Claims.

Even if Plaintiffs could somehow transform their CEMA claim into a traditional tort claim (which they cannot), their claim still fails under Rule 9(b). Rule 9(b) imposes heightened requirements for claims alleging fraud or misrepresentation and requires a plaintiff to allege fraud with particularity. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs must allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal citations omitted). Also, "[t]o comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT - PAGE 14

EVANS, CRAVEN
& LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Swartz*, 476 F.3d at 764 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Here, Plaintiffs identify and provide a random list of promotional subject line categories, without alleging who drafted them, how they were false, how any recipient relied on them, and/or how anyone was injured. AC ¶¶ 42–80; Ex. A. As a result, Plaintiffs have not provided Ulta with reasonable notice of any particular misconduct that would constitute fraud, much less at the level of specificity required by Rule 9(b). Preemption thus applies.

## B.   Conflict Preemption Applies to Bar Plaintiffs' CEMA Claim.

Conflict preemption independently bars Plaintiffs' CEMA claim. *See English*, 496 U.S. at 78–80 (recognizing conflict preemption). Conflict preemption applies where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations omitted); *see also Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000) (recognizing that "the saving clause [like express preemption provision] does *not* bar the ordinary working of conflict pre-emption principles"); *Meyer v. United Healthcare Ins. Co.*, 840 F. App'x 174, 176 (9th Cir. 2021) (finding express preemption exceptions inapplicable to claims otherwise preempted by conflict preemption). Congress passed CAN-SPAM as "one national standard applicable

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

across jurisdictions" because "the patchwork of state laws had proven ineffective." *Virtumundo*, 575 F.3d at 1062–63 (cleaned up); *see also* 15 U.S.C. § 7701(a)(11). Likewise, "a single e-mail could instantaneously implicate the laws of multiple jurisdictions . . . before reaching its intended recipient, whose location is often unknown. Therefore, 'one state's Internet laws may impose compliance costs on businesses throughout the country.'" *Virtumundo*, 575 F.3d at 1063 (citation omitted). To this end, Congress intended that businesses "would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) (concluding that CAN-SPAM preempted California state law claims). As the Ninth Circuit noted: "It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Virtumundo*, 575 F.3d at 1063.

With this lens in mind, CEMA is a significant obstacle to CAN-SPAM's goal "to regulate commercial e-mail 'on a nationwide basis'" and to give businesses certainty. *Virtumundo*, 575 F.3d at 1061 (quoting 15 U.S.C. § 7701(b)(1)). Specifically, CEMA and CAN-SPAM differ in several key respects:

- **CEMA Requires Knowledge of Washington Residency:** CEMA requires the sender to know or reasonably should know the recipient is a Washington



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

resident; CAN-SPAM does not. *Compare* Wash. Rev. Code § 19.190.020(1) *with* 15 U.S.C. § 7704(a)(2). Indeed, in enacting CAN-SPAM, Congress recognized that it is "extremely difficult for law-abiding businesses to know with which of these disparate [state] statutes they are required to comply" because email addresses "[do] not specify a geographic location." 15 U.S.C. § 7701(a)(11).

- **CAN-SPAM Requires Knowledge of Ability to Mislead:** Unlike CEMA's strict liability framework, CAN-SPAM requires "actual knowledge, or knowledge fairly implied on the basis of objective circumstances" as to whether an email subject line would "mislead a recipient, acting reasonably under the circumstances." 15 U.S.C. § 7704(a)(2).

- **CAN-SPAM Targets Deception About Material Facts:** CAN-SPAM targets deception concerning *material facts*; CEMA does not. CEMA targets simply "false or misleading information in the subject line." *Compare* Wash. Rev. Code § 19.190.020(1)(b) *with* 15 U.S.C. § 7704(a)(2).

- **CEMA Punishes More Than Just Sending Emails:** Regarding email subject lines, CEMA is broader than CAN-SPAM in that it penalizes sending, conspiring to send, or assisting in the transmission of a commercial email subject line; CAN-SPAM penalizes only sending the email subject line. *Compare* Wash. Rev. Code § 19.190.020(1) *with* 15 U.S.C. § 7704(a)(2).

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT - PAGE 17

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

CEMA's burdensome requirements impede CAN-SPAM's objective to provide businesses certainty by "regulat[ing] commercial email 'on a nationwide basis.'" *Virtumundo*, 575 F.3d at 1061 (quoting 15 U.S.C. § 7701(b)(1)). Accordingly, conflict preemption applies, and the Amended Complaint fails under Rule 12(b)(6). *See English*, 496 U.S. at 78–80.

## IV.    Plaintiffs' Derivative CPA Claim Necessarily Fails.

Plaintiffs' derivative CPA claim, which is wholly rooted in the alleged CEMA violations, fails because the CEMA claim cannot stand. *See* Parts II.A & III *supra*. Plaintiffs do not allege any independent facts for their CPA claim. AC ¶¶ 114–123. Plaintiffs state only that "[a] violation of CEMA is a *per se* violation of the CPA." *Id.* ¶ 116. Thus, Plaintiffs' derivative CPA claim should be dismissed. *Virtumundo*, 575 F.3d at 1065; *First Premier Bank*, 2009 WL 5195897, at *2.

## V.    CEMA Is Unconstitutional Under the Dormant Commerce Clause.

CEMA is "implicitly preempt[ed]" by the dormant Commerce Clause, as it "regulate[s] commerce in a manner that is disruptive to economic activities in the nation as a whole." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021) (citation omitted), *aff'd*, 598 U.S. 356 (2023).

As a threshold matter, CEMA inappropriately provides "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT - PAGE 18



EVANS, CRAVEN
& LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

(9th Cir. 2013) (citation omitted). CEMA's residency-triggered liability forces out-of-state competitors to build out Washington-specific segmentation for interstate email campaigns, while retailers operating exclusively in Washington can adopt CEMA as a default rule to avoid any retooling costs. This disparate treatment underscores CEMA's unconstitutional reach.

CEMA also "directly controls commerce occurring wholly outside" of Washington. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). CEMA imposes liability on any company that sends commercial emails to an address that the company "knows, or has reason to know, is held by a Washington resident" regardless of the recipient's location. Wash. Rev. Code § 19.190.020(1). For example, Ulta (headquartered in Illinois) may email a Washington resident away at college in California. This transaction takes place totally outside of Washington, yet CEMA tries to govern it. That is not a mere upstream effect of a neutral in-state standard; it is the direct regulation of out-of-state marketing practices aimed at a nationwide audience in violation of the dormant Commerce Clause, with Washington's rules effectively exported into every other state. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323–26 (9th Cir. 2015) (invalidating California residency-based sales statute under the dormant Commerce Clause).

Last, CEMA violates the dormant Commerce Clause because it creates "a lack of national uniformity [which] impede[s] the flow of interstate goods." *Nat'l*

*Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148, 1150 (9th Cir. 2012) (quoting *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 128 (1978)); *see also Healy*, 491 U.S. at 336–37 ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State.") (citation omitted). CEMA's subject line requirements impose burdens in states outside Washington for a minimal local benefit, forcing companies like Ulta to investigate regulatory schemes state by state and then eliminate email addresses for Washington residents (if even possible) to circumvent $500-per-email penalties. This burdensome analysis is precisely what CAN-SPAM's nationwide standard intended to prevent. *See* Part III.C *supra*; *Virtumundo*, 575 F.3d at 1063; *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639–40 (9th Cir. 1993) (finding Nevada statute invalid under the dormant Commerce Clause as it effectively mandated Nevada's regulations nationwide).

Because CEMA presents a "serious risk of inconsistent obligations wrought by the extraterritorial effect of the Statute," it "constitutes a per se violation of the Commerce Clause." *Nat'l Collegiate Athletic Ass'n*, 10 F.3d at 640. Accordingly, the Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety.



EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

DATED this 5th day of December, 2025

EVANS, CRAVEN & LACKIE, P.S.

By:  */s/ Markus Louvier*
     MARKUS W. LOUVIER, WSBA #39319
     STEPHANIE A. CROCKETT, WSBA #62797
     Evans, Craven & Lackie, P.S.
     818 West Riverside, Suite 250
     Spokane, WA 99201
     Tel: (509) 455-5200; Fax: (509) 455-3632
     mlouvier@ecl-law.com
     scrockett@ecl-law.com

     WILLKIE FARR & GALLAGHER LLP

By:  */s/ Craig Martin*
     CRAIG C. MARTIN (admitted *pro hac vice*)
     AMANDA S. AMERT (admitted *pro hac vice*)
     DEBRA BOGO-ERNST (admitted *pro hac vice*)
     MELANIE L. LEE (admitted *pro hac vice*)
     300 North LaSalle Drive
     Chicago, IL 60654
     Tel: (312) 728-9000; Fax: (312) 728-9199
     cmartin@willkie.com
     aamert@willkie.com
     dernst@willkie.com
     mlee@willkie.com

     *Attorneys for Defendant*

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT - PAGE 21

EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Walter Smith, WSBA #46695
Smith & Dietrich Law Office, PLLC
1226 State Avenue, NE, Suite 205
Olympia, WA 98506
walter@smithdietrich.com
*Via ECF*

Lynn A. Toops
Natalie A. Lyons
Ian R. Bensberg
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenmalad.com
ibensberg@cohenmalad.com
*Via ECF*

J. Gerard Stranch, IV
STRANCH, JENNINGS &
GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
*Via ECF*

Samuel J. Strauss
Raina V. Borrelli
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
sam@straussborrelli.com
raina@straussborrelli.com
*Via ECF*

By: */s/ Stephanie Crockett*
STEPHANIE A. CROCKETT, WSBA #62797

*Attorney for Defendant*

EVANS, CRAVEN
& LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632