1  NICHOLAS W. BROWN
   Attorney General of Washington
2  ROBERT HYDE, WSBA #33593
   BEN BRYSACZ, WSBA #54683
3  CLAIRE MCNAMARA, WSBA #50097
   Assistant Attorneys General
4  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104-3188
5  206-464-7744

6              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
7

8  SELAY SHAHPUR and LINDSEY      NO. 2:25-cv-00284-RLP
   SMITH, on their own behalf and on
   behalf of others similarly situated,   PLAINTIFF-INTERVENOR STATE
9                                          OF WASHINGTON'S RESPONSE
                        Plaintiff,         IN OPPOSITION TO ULTA
10                                         SALON, COSMETICS &
                 and                       FRAGRANCE, INC.'S MOTION TO
11                                         DISMISS
   STATE OF WASHINGTON,
12                                         February 26, 2026
                 Plaintiff Intervenor,     Without Oral Argument
13
        v.
14
   ULTA SALON, COSMETICS &
15 FRAGRANCE, INC.,

16              Defendant.

17

18

19

20

21

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS
(2:25-CV-00284-RLP)

1

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.    BACKGROUND ......................................................................................... 2

III.   ARGUMENT ............................................................................................. 2

     A.   CAN-SPAM Does Not Preempt CEMA Claims About Deceptive
        Subject Lines ................................................................................... 3

        1.   A plaintiff need not plead common law tort elements to avoid
             preemption ............................................................................. 5

        2.   A plaintiff need not specifically plead fraud to avoid
             preemption ............................................................................. 8

        3.   Applying Rule 9(b)'s heightened pleading standards is
             inconsistent with the CPA .................................................... 11

        4.   CEMA complements CAN-SPAM ...................................... 13

     B.   CEMA Does Not Violate the Dormant Commerce Clause ........ 15

IV.   CONCLUSION ....................................................................................... 20

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF AUTHORITIES

<u>Cases</u>

*Am. Apparel & Footwear Ass'n, Inc. v. Baden,*
    107 F.4th 934 (9th Cir. 2024) .......................................................................5

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC,*
    622 F. Supp. 2d 935 (N.D. Cal. 2009) .................................................9, 15

*Asis Internet Servs. v. Member Source Media, LLC,*
    No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .............9

*Asis Internet Servs. v. Subscriberbase Inc.,*
    No. 09-3503SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ...............10, 15

*Baertschi v. Jordan,*
    413 P.2d 657 (Wash. 1966) ........................................................................12

*Beyond Sys., Inc. v. Kraft Foods, Inc.,*
    777 F.3d 712 (4th Cir. 2015) ................................................................10–11

*Black Star Farms LLC v. Oliver,*
    600 F.3d 1225 (9th Cir. 2010) ...................................................................16

*Brown & Williamson Tobacco Corp. v. Pataki,*
    320 F.3d 200 (2d Cir. 2003) .......................................................................19

*Brown v. Old Navy, LLC,*
    567 P.3d 38 (Wash. 2025) ......................................................................8, 17

*Daniels Sharpsmart, Inc. v. Smith,*
    889 F.3d 608 (9th Cir. 2018) ......................................................................18

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.,*
    391 P.3d 582 (Wash. App. 2017) ................................................................12

*Erie R. Co. v. Tompkins,*
    304 U.S. 64 (1938) .....................................................................................13

*Flynt v. Bonta,*
    131 F.4th 918, 926 (9th Cir. 2025) .............................................................16

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - ii
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Gordon v. Impulse Mktg. Grp., Inc.*,
　375 F. Supp. 2d 1040 (E.D. Wash. 2005) ........................................................12

*Gordon v. Virtumundo, Inc.*,
　575 F.3d 1040 (9th Cir. 2009)................................................................3–7, 13

*Harbers v. Eddie Bauer*, *LLC*,
　415 F. Supp. 3d 999 (W.D. Wash. 2019)........................................................11

*Harrington v. Vineyard Vines, LLC*,
　No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) .....2, 6, 8

*Healy v. Beer Institute, Inc.*,
　491 U.S. 324 (1989) .................................................................................16–17

*Hickey v. Voxernet LLC*,
　887 F. Supp. 2d 1125 (W.D. Wash. 2012).................................................4, 14

*Hoang v. Reunion.com, Inc.*,
　No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ............9

*Hypertouch Inc. v. ValueClick, Inc.*,
　123 Cal. Rptr. 3d 8 (Cal. App. 2011) ............................................................11

*Industrial Truck Ass'n, Inc. v. Henry*,
　125 F.3d 1305 (9th Cir. 1997)........................................................................13

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
　No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009)............8

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
　48 F.3d 391 (9th Cir. 1995)............................................................................19

*Ma v. Nike, Inc.*,
　No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026)...2, 6, 9–10

*Martins v. Vermont Mut. Ins. Co.*,
　92 F.4th 325 (1st Cir. 2024) ..........................................................................13

*Medtronic, Inc. v. Lohr*,
　518 U.S. 470 (1996) .........................................................................................4

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - iii
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Meilleur v. AT & T Inc.*,
   No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011)..............4

*Nat'l Collegiate Athletic Ass'n v. Miller*,
   10 F.3d 633 (9th Cir. 1993)...................................................................18

*Nat'l Pork Producers Council v. Ross*,
   6 F.4th 1021 (9th Cir. 2021) .................................................................20

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ......................................................................18, 20

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
   469 F.3d 348 (4th Cir. 2006)..........................................................5, 7, 10

*Panag v. Farmers Ins. Co. of Washington*,
   204 P.3d 885 (Wash. 2009).................................................................12

*Rosenblatt v. City of Santa Monica*,
   940 F.3d 439 (9th Cir. 2019)...............................................................19

*Scott v. Cingular Wireless*,
   161 P.3d 1000 (Wash. 2007).................................................................3

*State Farm Fire & Cas. Co. v. Huynh*,
   962 P.2d 854 (Wash. App. 1998)..........................................................12

*Stengel v. Medtronic*,
   704 F.3d 1224 (9th Cir. 2013).................................................................4

*Stieneke v. Russi*,
   190 P.3d 60 (Wash. App. 2008).............................................................12

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
   No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020)...3

*Wagner v. Spire Vision*,
   No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ..............9

*Ward v. United Airlines, Inc.*,
   986 F.3d 1234 (9th Cir. 2021)...............................................................20

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - iv
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  *Wash. State Grange v. Wash. State Republican Party*,
       552 U.S. 442 (2008) ...................................................................................17

2

3  *Washington Bankers Ass'n v. State*,
       495 P.3d 808 (Wash. 2021)........................................................................20

4                                                    Statutes

5  15 U.S.C. § 7704(a)(2) .....................................................................................14

6  15 U.S.C. § 7707(b)(1) .......................................................................................4

7  15 U.S.C. § 7707(b)(2) .....................................................................................15

8  Wash. Rev. Code § 19.190.020(1)(a) ................................................................6

9  Wash. Rev. Code § 19.190.020(1)(b)...............................................2, 5, 14, 17

10 Wash. Rev. Code § 19.190.030(1)(b).............................................................11

11 Wash. Rev. Code § 19.86.920 .........................................................................13

12                                            Other Authorities

13 H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on
       H.B. 2752 (Wash. 1998) ..................................................................................2

14

15 S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg.
       Sess., Senate Bill Report on H.B. 1037 (Wash. 1999) ....................................2

16 S. Rep. No. 108-102 (2003)..........................................................................6, 14

17

18

19

20

21

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - v
(2:25-CV-00284-RLP)

# I.    INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. Ulta's cited authority does not support its argument that CEMA plaintiffs must plead fraud or another tort to avoid preemption, nor does Ulta acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. In short, Ulta's arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

This Court should deny the motion to dismiss, just as other Washington federal courts have done in two recent orders. *See Harrington v. Vineyard Vines,*

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 1
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    *LLC*, No. C25-1115TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025),

2    *reconsideration denied sub nom.*, No. C25-1115 TSZ,

3    2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*,

4    No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).

5                          **II.    BACKGROUND**

6          Adopted in 1998, CEMA's application to email is narrow. At issue here,

7    CEMA prohibits a person from sending email marketing messages containing

8    "false or misleading information," specifically "in the subject line," to email

9    addresses the sender knows or has reason to know belongs to Washington State

10   residents. Wash. Rev. Code § 19.190.020(1)(b). The Attorney General's Office

11   reported to the Legislature that during the five-month period before CEMA's

12   passage, of 322 complaints received about unsolicited email, many were

13   commercial advertisements and "spam [was] the highest category of consumer

14   complaints" the office received overall. H. Comm. on Energy & Utilities,

15   55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative

16   testimony emphasized that CEMA "allows expansion of Internet usage while

17   curtailing abuses before they reach crisis." S. Comm. on Energy, Technology &

18   Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on

19   H.B. 1037 (Wash. 1999).

20                          **III.    ARGUMENT**

21         The State intervenes for the limited purpose of defending CEMA's

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 2
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1  constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect

2  to other issues raised in the litigation. Overall, the State agrees with the arguments

3  regarding CEMA's constitutionality in Plaintiff's response brief. ECF No. 46

4  at 11-20. The State writes separately, however, to offer the perspective of the

5  State's chief law enforcement officer as to CEMA's constitutionality, its proper

6  interpretation, and the importance of private enforcement of consumer protection

7  statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006

8  (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral

9  part of CPA enforcement" and that consumers "bringing actions under the CPA

10  do not merely vindicate their own rights; they represent the public interest and

11  may seek injunctive relief even when the injunction would not directly affect their

12  own private interests").

13  **A.    CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

15  Preemption is a constitutional issue warranting the State's intervention

16  under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir.

17  2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives

18  from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l*

19  *LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442,

20  at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are

21  constitutional in nature, state must be allowed to address such claims).

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 3
(2:25-CV-00284-RLP)

1    Any preemption analysis begins with the "presumption against supplanting

2    the historic police powers of the States by federal legislation unless that is the

3    clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned

4    up). "This presumption against preemption leads us to the principle that express

5    preemption statutory provisions should be given narrow interpretation." *Id.*

6    (cleaned up). Ulta, as the party "seeking to invalidate a state law based on

7    preemption bear[s] the considerable burden of overcoming this starting

8    presumption that Congress does not intend to supplant state law." *Stengel v.*

9    *Medtronic,* 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up).

10   "Consumer protection is an area of traditional state authority creating a

11   presumption against federal preemption." *Hickey v. Voxernet LLC*,

12   887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.,*

13   No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus,

14   the presumption against preemption applies to both the *existence* and *scope* of the

15   alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

16   As relevant here, CAN-SPAM's preemption clause is extremely limited.

17   While it states that the statute supersedes any state law that "regulates the use of

18   electronic mail to send commercial messages," it expressly exempts "any such

19   statute" that "prohibits falsity or deception in any portion of a commercial

20   electronic    mail    message    or    information    attached    thereto."

21   15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that,

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 4
(2:25-CV-00284-RLP)

1   prohibiting any email that "[c]ontains false or misleading information in the

2   subject line." Wash. Rev. Code § 19.190.020(1)(b). This plain language should

3   end the analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934,

4   939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required

5   "to look to the plain wording of the statute and surrounding statutory framework

6   to determine whether Congress intended to preempt state law").

7   **1.    A plaintiff need not plead common law tort elements to avoid preemption**

8

9   Despite CAN-SPAM's plain language, Ulta presses a restrictive reading of

10  the preemption clause, asserting it saves only traditional tort theories like fraud

11  from preemption. ECF No. 38 at 10-14 (relying primarily on *Virtumundo*). This

12  is incorrect as a matter of law and cannot be squared with Ulta's own authorities.

13  Sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's

14  preemption clause as an issue of first impression in this circuit, relying in part on

15  the then-only federal circuit court decision addressing the clause: *Omega World*

16  *Travel, Inc. v. Mummagraphics, Inc*., 469 F.3d 348 (4th Cir. 2006). *Virtumundo,*

17  575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common

18  law torts like fraud are the only state law claims saved from the CAN-SPAM

19  preemption clause. To the contrary, both cases *confirm* the exception applies

20  broadly to "traditionally tortious or wrongful conduct." *Virtumundo*, 575 F.3d at

21  1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting

22

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 5 (2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Ulta's arguments, *Virtumundo* explained state law claims about deceptive email

2    subject lines were not preempted. *Id*. at 1062 (observing legislative intent that "a

3    State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in

4    commercial e-mail would not be preempted").

5        Thus, because CEMA's subject-line provision prohibits only "falsity" or

6    "deception" in the subject-line of commercial e-mails, it "falls squarely within

7    this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1;

8    *see also Ma*, 2026 WL 100731, at *2 (same). This conclusion likewise is

9    supported by the Senate Report accompanying CAN-SPAM, which explained

10    that although the purpose of the CAN-SPAM Act was to impose a single national

11    standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and

12    deception in e-mail do not raise the same concern, because they target behavior

13    that a legitimate business trying to comply with relevant laws would not be

14    engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

15        In any event, *Virtumundo* did not directly address deceptive email subject

16    lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's

17    claims under CEMA's provision (1)(a), which prohibits email that

18    "misrepresents or obscures" information about the sender.

19    Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any

20    event, unlike this case, the *Virtumundo* plaintiff admitted none of the emails at

21    issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063.

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 6
(2:25-CV-00284-RLP)

Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-1064. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which <u>only</u> prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. *Id*. at n.17. When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was unsettled. 575 F.3d at 1059. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. at 1059. Last year, following

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 7 (2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

certification from the Western District of Washington, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id.* In short, CEMA's subject line provision prohibits false or deceptive statements about facts that would be important to consumer decision making, and to the extent there was any question, *Brown* thus harmonizes CEMA with CAN-SPAM. *See Harrington*, 2025 WL 3677479, at *1.

Tellingly, Ulta does not meaningfully address the *Brown* opinion, instead arguing that Plaintiff must allege all of the elements of common law fraud to avoid preemption. ECF No. 38 at 11-14. This argument will be addressed in greater detail in the following section.

### 2.    A plaintiff need not specifically plead fraud to avoid preemption

Ulta spends considerable time addressing the elements of fraud in its motion. ECF No. 38 at 11-14. Ulta's reliance upon *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009), to support its argument is mystifying. In that case, Judge Robart rejected

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 8 (2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    the very same argument Ulta advances here, i.e., that a plaintiff is required to

2    allege all elements of fraud to bring a CEMA claim.

3        Consumer protection statutes such as CEMA do not sound in fraud, and

4    "[t]he great weight of district court and state court decisions" reject a requirement

5    that consumers plead "all the elements of common law fraud," including damages

6    or reliance, to avoid preemption of their anti-spam law claims. *Wagner v. Spire*

7    *Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal.

8    Mar. 3, 2014) (collecting cases); *see also Ma*, 2026 WL 100731, at *3 (addressing

9    this issue and concluding plaintiff need not plead reliance, injury or materiality

10   to avoid preemption); *Asis Internet Servs. v. Member Source Media, LLC*,

11   No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010)

12   (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's

13   preemption clause, and holding plaintiff "need not plead reliance and damages in

14   order for its claim to be excepted from preemption"); *Hoang v.*

15   *Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal.

16   Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege

17   detrimental reliance was not proper grounds for dismissal).

18       Indeed, Congress explicitly chose not to use the word "fraud" in the CAN-

19   SPAM preemption provision at issue here, even though it did in the very next

20   provision. *Ma*, 2026 WL 100731, at *3 (citing *Asis Internet Servs. v.*

21   *Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009)

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 9
(2:25-CV-00284-RLP)

1    ("Congress . . . is certainly familiar and with the word 'fraud' and choose not to

2    use it; the words 'falsity *or* deception' suggest broader application . . . Congress

3    utilized the word 'fraud' in the very next subsection but not in the savings

4    clause.") (citation omitted); *Asis Internet Servs. v. Subscriberbase Inc.*,

5    No. 09-3503SC, 2010 WL 1267763, at *11 (N.D. Cal. Apr. 1, 2010) ("The

6    explicit language of the preemption clause betrays no intention by Congress to

7    limit state regulation to the simple codification of common law fraud in its purest

8    form.")). This Court should not impose extraneous non-statutory fraud standards

9    here, just as other courts within and outside of Washington. *Id.*

10       CEMA's prohibition on false or misleading subject lines, like similar

11    consumer protection statutes, reflects policy decisions about wrongful conduct

12    for which there was no common law tort remedy. A plaintiff need not allege the

13    elements of fraud because the statute has already defined the wrongful behavior.

14    For similar reasons, the Fourth Circuit concluded that neither California nor

15    Maryland's anti-spam statutes were preempted despite neither one requiring

16    pleading or proof of the elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc.*,

17    777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). Looking at

18    Maryland's statute, the court found that the state appellate court's earlier

19    conclusion that violations of the anti-spam statute, "like violations of the

20    Consumer Protection Act," impose liability for wrongful conduct similar to tort,

21    was sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 10
(2:25-CV-00284-RLP)

1    Fourth Circuit likewise noted that (like *Brown*), a state appellate court "limit[ed]

2    the application of California's anti-spam law to deceptive emails" and therefore

3    was not preempted. *Id.* (quoting *Hypertouch Inc. v. ValueClick, Inc.*,

4    123 Cal. Rptr. 3d 8 (Cal. App. 2011)). The *Hypertouch* court had already held

5    California's anti-spam law "dispenses with many of the elements associated with

6    common law fraud." *Hypertouch*, 123 Cal. Rptr. 3d. Just as the Western District

7    did in *Ma*, these courts rejected Ulta's proposed rule here that the elements of

8    fraud must be pled to avoid preemption. The Western District made a similar

9    finding when concluding a plaintiff had Article III standing when making a

10   CEMA claim: "[t]he harms resulting from deceptive commercial e-mails

11   resemble the type of harms remedied by nuisance or fraud actions." *Harbers v.*

12   *Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). The Court

13   should likewise reject Ulta's effort here to impose additional pleading

14   requirements on CEMA plaintiffs.

15        **3.    Applying Rule 9(b)'s heightened pleading standards is
             inconsistent with the CPA**

16

17        Ulta's argument also runs counter to the CPA. A CEMA

18   subject-line provision violation is a per se CPA violation.

19   Wash. Rev. Code § 19.190.030(1)(b). A CPA claim is not a fraud-based cause of

20   action: "[t]he CPA significantly differs from traditional common law standards

21   of fraud and misrepresentation." *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 11
(2:25-CV-00284-RLP)

1    391 P.3d 582, 587 (Wash. App. 2017). Thus, despite Ulta's argument that

2    Plaintiff is required to plead the elements of fraud (ECF No. 38 at 12), Rule 9(b)

3    is inapplicable to both the CPA and CEMA. *Gordon v. Impulse Mktg. Grp., Inc.*,

4    375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005) (explaining a claim under CEMA

5    and CPA did not sound in fraud because the claims required different elements

6    and holding CEMA claims "do not trigger the heightened pleading requirements

7    of Rule 9(b)."). Indeed, the elements and burden of proof are materially different

8    between CPA claims and fraud.

9        A private CPA violation requires five elements, *Panag v. Farmers Ins. Co.*

10   *of Washington*, 204 P.3d 885, 889 (Wash. 2009), while fraud has nine, *Stieneke*

11   *v. Russi*, 190 P.3d 60, 69-70 (Wash. App. 2008) (quotation omitted). A CPA

12   violation (and, thus, a CEMA violation) is established with the standard civil

13   evidentiary burden of "preponderance of the evidence," while fraud is subject to

14   the higher "clear, cogent, and convincing" burden. *E.g.*, *Baertschi v. Jordan*,

15   413 P.2d 657, 660 (Wash. 1966) (fraud claim); *State Farm Fire & Cas. Co. v.*

16   *Huynh*, 962 P.2d 854, 863 (Wash. App. 1998) (fraud and CPA claims). Indeed,

17   no Washington appellate court has ever held that a CPA claim (whether direct or

18   per se) sounds in fraud or has required a heightened fraud pleading standard.

19   Federal courts can impose pleading standards, but they cannot add elements to

20   state law claims nor change the substantive evidentiary burdens of state law

21   claims as Ulta tacitly urges. *See, e.g.*, *Martins v. Vermont Mut. Ins. Co.*,

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 12
(2:25-CV-00284-RLP)

92 F.4th 325, 328 (1st Cir. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Finally, the CPA must be liberally construed to protect consumers. Wash. Rev. Code § 19.86.920. Applying fraud standards to a per se CPA claim—like a CEMA subject line provision violation—conflicts with Washington's liberal construction mandate.

### 4.    CEMA complements CAN-SPAM

Ulta next argues that CEMA is unconstitutional under a theory of conflict preemption. ECF No. 38 at 15. To the contrary, the Court can harmonize CEMA and CAN-SPAM and conflict preemption does not apply.

There are two types of conflict preemption: (1) "where it is impossible to comply with both state and federal requirements"; and (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Industrial Truck Ass'n, Inc. v. Henry,* 125 F.3d 1305, 1309 (9th Cir. 1997). Ulta does not advance the first type, as a company emailing potential customers easily can avoid misleading them under both statutes. Ulta instead advances the second theory. ECF No. 38 at 15.

A preemption analysis is "guided by the oft-repeated comment that the purpose of Congress is the ultimate touchstone in every preemption case." *Virtumundo*, 575 F.3d at 1060 (cleaned up). As noted above, Ulta faces a heavy

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 13 (2:25-CV-00284-RLP)

1  burden to overcome the presumption that a consumer protection statute like

2  CEMA is preempted. *Hickey*, 887 F. Supp. 2d at 1130.

3       Here, Ulta's conflict preemption analysis is based entirely on Congress's

4  desire for a more uniform regulatory scheme for email. ECF No. 38 at 15-16.

5  This argument fails out of the gate, though. When passing CAN-SPAM, Congress

6  noted that although the purpose of the legislation was to impose a single national

7  standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and

8  deception in e-mail do not raise the same concern, because they target behavior

9  that a legitimate business trying to comply with relevant laws would not be

10 engaging in anyway."  S. Rep. No. 108-102, at 21-22. Thus, Congress itself

11 rejected Ulta's conflict preemption argument decades ago.

12      In any event, CEMA's subject line provision aligns with Congress'

13 purpose in enacting CAN-SPAM—a purpose which would not be served by

14 preempting or narrowing CEMA. Congress enacted CAN-SPAM in 2003 to

15 "curb the negative consequences of spam and spamming practices without

16 stifling legitimate commerce." *Id*. at 1045. CAN-SPAM's prohibition on

17 deceptive or misleading information in email subject lines is one means of

18 accomplishing this purpose. 15 U.S.C. § 7704(a)(2). CEMA's subject line

19 provision supports this same goal by prohibiting "false or misleading"

20 information in email subject lines.  Wash. Rev. Code § 19.190.020(1)(b).

21 Congress chose to expressly save such state law claims regarding "falsity or

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 14
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    deception" from preemption without requiring plaintiffs to plead "fraud." Again,

2    as one district court observed, Congress "is certainly familiar with the word

3    'fraud'" but chose not to use it even though it "utilized the word 'fraud' in the

4    very next subsection but not in the savings clause." *Consumerbargaingiveaways*,

5    *supra*, 622 F. Supp. 2d at 942 (citing 15 U.S.C. § 7707(b)(2)).

6        Finally, requiring higher, more stringent pleading standards for claimants

7    does not serve any congressional purpose. *Subscriberbase*, *supra*,

8    2010 WL 1267763, at *11-12 (stating the focus of CAN-SPAM is on the

9    "behavior of advertisers," and "adding the traditional fraud elements of reliance

10   and damages does not add anything to Congress's efforts to create a uniform

11   system of regulation governing email advertisements"). Ulta's argument

12   undermines, rather than protects, the federal interest in CAN-SPAM.

13   **B.    CEMA Does Not Violate the Dormant Commerce Clause**

14       Ulta next argues that CEMA violates the dormant Commerce Clause

15   because: (1) CEMA improperly treats spammers who solely operate within

16   Washington differently than those who operate in both Washington and other

17   states; (2) CEMA improperly controls conduct occurring wholly outside of

18   Washington; and (3) CEMA improperly creates a lack of national uniformity.

19   ECF No. 38 at 18-20. These arguments all fail.

20       Ulta first argues that CEMA provides preferential treatment to in-state

21   "retailers operating exclusively in Washington" because they "can adopt CEMA

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 15
(2:25-CV-00284-RLP)

1    as a default rule to avoid any retooling costs," and discriminates against "out-of-

2    state competitors" who must "build out Washington-specific segmentation for

3    interstate email campaigns." ECF No. 38 at 19. It is well established that the

4    "party challenging the statute bears the burden of showing discrimination."

5    *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite

6    this, Ulta comes to Court with only rank speculation about what in-state and out-

7    of-state companies "must do." Such speculative attorney arguments pointedly

8    ignore "the Supreme Court's clear instruction . . . that extreme caution is

9    warranted before a court deploys its implied authority to reject a state law under

10   the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir.

11   2025), *cert. denied,* 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (cleaned up).

12   In any event, this argument acknowledges that both in-state and out-of-state

13   companies are treated exactly the same because they are each required to comply

14   with CEMA when emailing Washington residents. There is no discrimination.

15       Ulta's next argument asks this Court to invalidate CEMA for its alleged

16   extraterritorial *impact*, but again, this is based on mere speculation and a single

17   hypothetical. ECF No. 38 at 19 ("For example, Ulta (headquartered in Illinois)

18   may email a Washington resident away at college in California. This transaction

19   takes place totally outside of Washington, yet CEMA tries to govern it.").

20   In support of this argument, Ulta relies upon *Healy v. Beer Institute, Inc.*,

21

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 16
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    491 U.S. 324 (1989), and its progeny, but reliance upon *Healy* is misplaced for

2    two reasons.

3         First, Ulta's speculative hypothetical underscores why facial challenges

4    are so disfavored. *See Wash. State Grange v. Wash. State Republican Party*,

5    552 U.S. 442, 449, 450–51 (2008) (facial challenges are disfavored because they

6    "often rest on speculation," "run contrary to the fundamental principle of judicial

7    restraint" and "threaten to short circuit the democratic process").

8         Ulta's purported concern that a Washington resident may receive an email

9    while temporarily out of state ignores the clear Washington connection required

10   by CEMA—the requirement the email is sent to a Washington resident.

11   *See, e.g.*, *Brown*, 567 P.3d at 45 (CEMA "targets a specific deceptive commercial

12   practice: sending Washington residents commercial e-mails that contain 'false or

13   misleading   information   in   the   subject   line[s].'")   (quoting

14   Wash. Rev. Code § 19.190.020(1)(b)). This   scenario   does   not   offend   the

15   Constitution, and Ulta's college student hypothetical cannot change the fact that

16   Wash. Rev. Code § 19.190.020(1)(b)   is   focused   upon   activity   targeting

17   Washington consumers. Simply put, a company that directs its commercial email

18   to Washington residents does not get a free pass from compliance with

19   Washington law when the resident is temporarily traveling out of state.

20        Second, given the unquestionable connection to Washington residents,

21   Ulta's argument goes to CEMA's alleged extraterritorial *impact*, which is an

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 17
(2:25-CV-00284-RLP)

1    insufficient basis to invalidate a state law under the dormant Commerce Clause.

2    In *National Pork Producers Council v. Ross*, the United States Supreme Court

3    unanimously rejected the idea that *Healy* stands for the almost per se rule against

4    extraterritoriality that Ulta advocates for here. 598 U.S. 356, 368 (2023). In its

5    motion to dismiss, Ulta cites only to the Ninth Circuit's decision in *National Pork*

6    *Producers*, ECF No. 38 at 18. Ulta's reply is silent as to *National Pork Producers*

7    and instead cites two cases that rely upon the very aspect of *Healy* called into

8    question in *National Pork Producers*: *Nat'l Collegiate Athletic Ass'n v. Miller*,

9    10 F.3d 633, 639–40 (9th Cir. 1993) and *Daniels Sharpsmart, Inc. v. Smith*,

10   889 F.3d 608, 614–16 (9th Cir. 2018). ECF No. 49 at 10. Thus, Ulta fails to

11   discuss the Supreme Court's analysis of *Healy* in *National Pork Producers*, let

12   alone acknowledge that it is dispositive of its arguments. If there was such a rule

13   as Ulta proposes, it is hard to imagine how the interconnected modern economy

14   would continue to function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our

15   interconnected national marketplace, many (maybe most) state laws have the

16   'practical effect of controlling' extraterritorial behavior.").

17       Ulta's third and final argument—that CEMA violates the dormant

18   Commerce Clause because it creates a lack of national uniformity—fares no

19   better. This argument fails out of the gate because it is premised upon the

20   incorrect argument that CAN-SPAM's desire for a more unified national scheme

21   sweeps up CEMA. ECF No. 38 at 20.

22

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 18
(2:25-CV-00284-RLP)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    In any event, Ulta argues that "CEMA's subject line requirements impose

2    burdens in states outside Washington for a minimal local benefit," but its analysis

3    is paper thin. The balancing of burdens and local benefits under the dormant

4    Commerce Clause "does not invite courts to second-guess legislatures by

5    estimating the probable costs and benefits of the statute." *Brown & Williamson*

6    *Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court

7    must "presume the law serves the [state's] legitimate interests." *Rosenblatt v. City*

8    *of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019). Ulta, as the party challenging

9    CEMA, bears the burden on this issue. *Id.*; *Kleenwell Biohazard Waste & Gen.*

10    *Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995) (stating

11    party challenging law must "establish that the burdens that the regulation imposes

12    on interstate commerce clearly outweigh the local benefits arising from it").

13    Ulta supports this constitutional argument—one in which the Court must

14    exercise "extreme caution"—by simply stating that CEMA "forc[es] companies

15    like Ulta to investigate regulatory schemes state by state and then eliminate email

16    addresses for Washington residents (if even possible) to circumvent $500-per-

17    email penalties." ECF No. 38 at 20. In short, Ulta is arguing that the local benefits

18    identified by the Washington legislature in enacting CEMA are clearly

19    outweighed with the cost of compliance. This argument fails because "[t]he mere

20    fact that a firm engaged in interstate commerce will face increased costs as a

21    result of complying with state regulation does not, on its own, suffice to establish

22    a substantial burden on interstate commerce." *Ward v. United Airlines, Inc.*,

PLAINTIFF-INTERVENOR STATE
OF WASHINGTON'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 19
(2:25-CV-00284-RLP)

986 F.3d 1234, 1241–42 (9th Cir. 2021); *see also Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1032 (9th Cir. 2021) ("For dormant Commerce Clause purposes, laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce."); *Washington Bankers Ass'n v. State*, 495 P.3d 808, 826 (Wash. 2021) ("[E]conomic hardship alone is insufficient to invalidate a law because the commerce clause protects markets," not individual entities).

## IV.   CONCLUSION

The State respectfully requests that the Court deny Ulta's constitutional challenges to CEMA.

DATED this 3rd day of February, 2026.

NICHOLAS W. BROWN
Attorney General


*/s/ Robert Hyde*
ROBERT HYDE, WSBA #33593
BEN BRYSACZ, WSBA #54683
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorney General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-474-7744
robert.hyde@atg.wa.gov
ben.brysacz@atg.wa.gov
claire.mcnamara@atg.wa.gov