THE HONORABLE REBECCA L. PENNELL

MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201
Tel: (509) 455-5200; Fax: (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com

CRAIG C. MARTIN (admitted *pro hac vice*)
AMANDA S. AMERT (admitted *pro hac vice*)
DEBRA BOGO-ERNST (admitted *pro hac vice*)
MELANIE L. LEE (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
300 North LaSalle Dr.
Chicago, IL 60654
Tel: (312) 728-9000; Fax: (312) 728-9199
cmartin@willkie.com
aamert@willkie.com
dernst@willkie.com
mlee@willkie.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELAY SHAHPUR and LINDSEY SMITH, on their own behalf and on behalf of others similarly situated,<br><br>    *Plaintiffs*,<br><br>and<br><br>STATE OF WASHINGTON,<br><br>    *Plaintiff-Intervenor*,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>    *Defendant*. | Case No. 2:25-cv-00284-RLP<br><br>Hon. Rebecca L. Pennell<br><br>**DEFENDANT'S REPLY TO PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br><br>February 26, 2026<br>Without Oral Argument |

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS



EVANS, CRAVEN
& LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

I.    CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal Under Rule 12(b)(6). ...................................................................... 1

    A.    The CAN-SPAM Savings Clause Preserves Only Traditional Tortious Theories of Deception. ......................................................... 1

    B.    The Ninth Circuit Requires Traditional Tortious Elements for CEMA Claims to Avoid Preemption. .............................................. 4

    C.    Conflict Preemption Independently Bars CEMA ............................ 6

II.    CEMA Is Unconstitutional Under the Dormant Commerce Clause. .......... 7

    A.    CEMA Directly Regulates Interstate Commerce. ............................ 8

    B.    CEMA Excessively Burdens Interstate Commerce. ........................ 9

CONCLUSION ......................................................................................................... 10

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS



EVANS, CRAVEN & LACKIE, P.S.

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

# INTRODUCTION

Plaintiff-Intervenor State of Washington (the "State") intervenes solely to "offer [its] perspective" about the constitutionality of Washington's Commercial Electronic Mail Act ("CEMA"). State's Opposition ("Opposition" or "Opp.," Dkt. No. 51) at 3. But constitutionality is not the only basis upon which Ulta moved to dismiss Plaintiffs' Amended Complaint ("Complaint"). Plaintiffs' Complaint fails independently under Rules 8 and 12(b)(6) arguments which the State did not address. *See* Op. Br., Dkt. No. 38, at 3–8; Rep. Br., Dkt. No. 49, at 1–6. Accordingly, the Court need not reach any of the constitutional questions on which the State intervenes. Dismissal is appropriate without regard to constitutionality.

If the Court nonetheless addresses the constitutionality questions, the Court should reject the State's arguments because: (i) the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM") expressly preempts CEMA; (ii) conflict preemption applies to preclude Plaintiffs' claims; and (iii) CEMA is unconstitutional under the dormant Commerce Clause.

## I.    CAN-SPAM Preempts Plaintiffs' CEMA Claim, Requiring Dismissal Under Rule 12(b)(6).

### A.    The CAN-SPAM Savings Clause Preserves Only Traditional Tortious Theories of Deception.

The Ninth Circuit's holding in *Gordon v. Virtumundo, Inc.* forecloses the State's argument, Opp. at 4, that CAN-SPAM's preemption is "extremely" limited. 575 F.3d 1040, 1061 (9th Cir. 2009). Indeed, the opposite is true: "the

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 1

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

express language of [CAN-SPAM's preemption clause] demonstrates Congress's intent that the CAN-SPAM Act broadly preempt state regulation of commercial e-mail with *limited, narrow exception*." *Id*. (emphasis added).

More specifically, CAN-SPAM's limited preemption exception only saves state laws when they prohibit "falsity or deception." 15 U.S.C. § 7707(b)(1). The Ninth Circuit determined that *falsity* in this exception is "'potentially ambiguous', since the word may mean either 'erroneous, incorrect' or 'purposely deceptive[.]'" *Virtumundo*, 575 F.3d at 1062 (citation omitted). But, falsity is paired with "deception" and thus "connotes a type of tort action based on misrepresentations." *Id.* Thus, only state laws that target "traditionally tortious or wrongful conduct" in email communication will *survive* CAN-SPAM preemption. *Id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)). For example, states have computer crime laws that prohibit the transmission of phishing emails, as these emails are designed to trick recipients into providing access to sensitive, personal information. Such laws, targeting tortious conduct, are not preempted by CAN-SPAM. Email subject lines rarely, if ever, would rise to this tortious or deceptive level, as they are generally designed to indicate to the recipient what the email regards. In contrast, "false or misleading information in the [email] subject line" under CEMA,[1] such as an alleged factual inaccuracy or

---

[1] Wash. Rev. Code § 19.190.020(1)(b).

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 2

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

omission, *will* be preempted by CAN-SPAM, as the limited preemption exception does not apply. *Virtumundo*, 575 F.3d at 1062–63. Sustaining a CEMA claim based on a factual inaccuracy in a subject line would "upend [the] balance [created by Congress in CAN-SPAM] and turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Id.* at 1061–63 (citations omitted).

Moreover, the State's reliance on two recent decisions from other courts in this circuit is misplaced. Opp. at 1–2. Those decisions cannot be squared with *Virtumundo*, which holds that the "CAN-SPAM Act prohibits only *deceptive* subject line headings or *materially* false or *materially* misleading header information." 575 F.3d at 1062 (emphasis in original). Likewise, post-*Virtumundo* decisions hold that state commercial electronic mail acts must include elements of materiality and actual deception to avoid dismissal under CAN-SPAM preemption. *See Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1006 (N.D. Ill. 2011) (relying on *Virtumundo* and finding that CAN-SPAM preempted the Illinois Electronic Mail Act because the plaintiff's claims did "not rise to the level of fraud" necessary to fit within the preemption exception); *Andrews v. Conversion Squared Corp.*, 2020 WL 3978063, at *2–3 (C.D. Cal. May 8, 2020) (finding missing information in email headers were "technical" errors that were not "material" in the "traditionally tortious or wrongful" sense to avoid preemption).

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 3

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

In an attempt to shirk binding Ninth Circuit precedent, the State claims that "*Virtumundo* did not directly address deceptive email subject lines." Opp. at 6–8. But the Ninth Circuit did not limit its preemption analysis in *Virtumundo* to a singular provision of CEMA. Instead, it expressly explained that it considered the "structure and purpose of the [CAN-SPAM] statute as a whole" as applied to CEMA. *Virtumundo*, 575 F.3d at 1061 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485–86 (1996)). Moreover, the court concluded that, by CAN-SPAM's "adopt[ion of] a reading of the preemption clause that conforms with the statute's structure as a whole and the stated legislative purpose," CEMA's provisions were preempted. *Virtumundo*, 575 F.3d at 1063. Thus, the Ninth Circuit's principles apply beyond the *Virtumundo* facts.

Finally, the State faults Ulta for its short discussion of *Brown v. Old Navy, LLC*, a Washington Supreme Court opinion, which the State says harmonizes CEMA with CAN-SPAM. Opp. at 8 (citing 567 P.3d 38, 47 (Wash. 2025)). But *Brown* does not address CAN-SPAM or preemption at all. Indeed, these issues were "outside the scope of the certified question" in *Brown*. 567 P.3d at 47.

**B.    The Ninth Circuit Requires Traditional Tortious Elements for CEMA Claims to Avoid Preemption.**

The State argues that consumer protection statutes like CEMA "do not sound in fraud," and therefore a CEMA plaintiff need not allege all elements of fraud to avoid preemption. Opp. at 8–9. However, without requiring Plaintiffs to

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 4

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

plead reliance, materiality or injury based on an allegedly misleading subject line, the State is effectively arguing for a strict liability standard under CEMA. This position leads to absurd results. For example, consider a company with a high email volume. If that company makes an unintentional error or omission in an email subject line sent to 10,000 customers, at CEMA's $500 per email statutory penalty, that equates to $5,000,000 in liability *without* regard to intent or whether a consumer was actually misled or injured. This punitive outcome cannot be the drafters' intent under CEMA, nor something that CAN-SPAM permits.

Moreover, the State's stance cannot be squared with *Virtumundo*. There, the Ninth Circuit found that the plaintiff failed to "present evidence that [defendant's] practice is *aimed* at misleading recipients," thus acknowledging that plaintiffs must demonstrate elements of fraud to establish a CEMA violation. *Virtumundo*, 575 F.3d at 1064 (emphasis added). Nor can the State's position be squared with CAN-SPAM, which requires, among other things, elements of "actual knowledge, or knowledge fairly implied on the basis of objective circumstances." 15 U.S.C. § 7704(a)(2).

The State next relies on a number of out-of-district cases to argue that Plaintiffs need not plead the elements of fraud to avoid preemption. Opp. at 9–10. But, the state laws in those cases differ from CEMA. *See Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *9 (N.D. Cal. Apr. 1, 2010) (analyzing

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 5



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

California statute); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (analyzing Maryland statute).

The State also claims that Rule 9(b)'s heightened pleading standard does not apply to CEMA and Washington Consumer Protection Act ("CPA") claims based on *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005). Opp. at 12. But that case was decided prior to the Ninth Circuit's holding in *Virtumundo* and, accordingly, is inapplicable.

C. **Conflict Preemption Independently Bars CEMA.**

Ulta demonstrated in its motion to dismiss briefing that conflict preemption applies to bar Plaintiffs' CEMA claims because CEMA is an "obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Industrial Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997). CEMA and CAN-SPAM differ in material ways concerning knowledge of residency, knowledge of ability to mislead, deception about material facts, and scope of prohibitions. *See* Op. Br., Dkt. No. 38, at 15–18; Rep. Br., Dkt. No. 49, at 9–10.

Nevertheless, the State asks this Court to attempt to "harmonize CEMA and CAN-SPAM" to avoid a finding that conflict preemption invalidates CEMA. Opp. at 13–15. That exercise is impossible. The text of CAN-SPAM itself demonstrates that preexisting state laws, like CEMA, conflict with CAN-SPAM's provisions: "Many states have enacted legislation intended to regulate or reduce unsolicited

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 6

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

commercial electronic mail, but these statutes impose different standards and requirements." 15 U.S.C. § 7701(a)(11). The State also attempts to argue that CAN-SPAM's legislative history shows that CEMA is not preempted because it regulates the type of "behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway," Opp. at 14 (citing S. Rep. No. 108–102, at 21–22 (2003)), but that ignores the exact problem that CAN-SPAM addresses: what constitutes a "false statement" differs materially across different state jurisdictions. Specifically, Congress found disparate state regimes were unworkable because email addresses do not reveal geography, making it "extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11). Thus, "[i]t would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Virtumundo*, 575 F.3d at 1063. Because a retailer can abide by CAN-SPAM's provisions, and yet run afoul of CEMA's more restrictive provisions, conflict preemption applies.

II.   **CEMA Is Unconstitutional Under the Dormant Commerce Clause.**

Plaintiffs' Complaint fails under Rules 8 and 12(b)(6) without regard to constitutionality. But even if the Court must reach constitutionality, CEMA violates the dormant Commerce Clause by: (i) clearly trying to regulate email with

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 7



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

no connection to Washington; and (ii) imposing a burden on interstate commerce that is clearly excessive in relation to the law's putative local benefits.

### A. CEMA Directly Regulates Interstate Commerce.

The State cannot save CEMA from Ulta's constitutional challenge because CEMA regulates communications with absolutely no nexus to Washington; it imposes liability regardless of where the sender is or transaction occurs, thereby "directly control[ling] commerce occurring wholly outside" Washington. Wash. Rev. Code § 19.190.020(1)(b); *Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989).

CEMA's knowledge requirement prohibits the transmission "of a commercial electronic mail message. . . to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." Wash. Rev. Code § 19.190.020(1). In passing CAN-SPAM, Congress expressed concerns about these type of requirements because "e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply." S. Rep. No. 108–102, at 21–22. This is distinct from the State's hypothetical in which commercial email to Washington residents would get a free pass from CEMA compliance when the resident is temporarily traveling out of state. Opp. at 17. Congress recognized that retailers would face multiple state laws and decided to create "one national standard [as] a proper exercise of the Congress's power to regulate interstate

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 8

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

commerce." S. Rep. No. 108–102, at 21. CEMA improperly attempts to police any message sent to a person anywhere in the country, just because they may have been a Washington resident at one point. *See Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639–40 (9th Cir. 1993); s*ee also Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 614–16 (9th Cir. 2018).

The State argues that *National Pork Producers Council v. Ross*, precludes Ulta's arguments regarding CEMA's extraterritorial effects. Opp. at 18 (citing 598 U.S. 356, 368 (2023)). While *National Pork* declined to find a per se rule against extraterritoriality, it did not address the unconstitutionality of state laws that directly regulate activity with no connections to the state. *Nat'l Pork*, 598 U.S. at 376 n.1. Because CEMA does so, it violates the dormant Commerce Clause.

**B.     CEMA Excessively Burdens Interstate Commerce.**

The State claims that this Court should not "'second-guess legislatures by estimating the probable costs and benefits of the statute'" and should instead "presume the law serves the [state's] legitimate interests." Opp. at 19. But here, Congress directly addressed the burden of these statutes: "it can be extremely difficult for law-abiding businesses to know with which of these disparate [state] statutes they are required to comply." 15 U.S.C. § 7701(a)(11); *see also Omega*, 469 F.3d at 355–56 ("it can be difficult or impossible to identify where recipients live and hence to determine the state laws that apply"). For example, a customer

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 9

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

may sign up in person for email communication at an Ulta store in Maryland because she lives there for part of the year, but she may reside full time in, or later move permanently to, Washington. Ulta is left with the extraordinary burden of determining which statute applies throughout the customer relationship, which is exactly why CAN-SPAM was enacted. "[T]he inherently interstate nature of e-mail communications" prompted Congress to pass CAN-SPAM; a "creation of one national standard is a proper exercise of the Congress's power to regulate interstate commerce," which must be respected. S. Rep. No. 108–102, at 21.

Moreover, any unarticulated local benefits the Washington legislature intended to address by enacting CEMA, which the State does not actually identify in its brief, cannot save CEMA. *Alario v. Knudsen*, 704 F. Supp. 3d 1061, 1086–87 (D. Mont. 2023) (finding that plaintiffs alleged a state law's burden likely exceeded local benefits where the "State argue[d] that the law's local benefits are significant" but did not "provid[e] any evidentiary support for those benefits.").

## CONCLUSION

As set forth in Ulta's motion to dismiss briefing, Plaintiffs' Complaint fails under Rules 8 and 12(b)(6). Accordingly, the Court need not reach any of the constitutional questions on which the State intervenes; dismissal is appropriate without regard to CEMA's constitutionality. However, if the Court considers constitutionality, the Court should reject the State's arguments.

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS – page 10

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
Tel: (509) 455-5200; Fax: (509) 455-3632

DATED this 17th day of February 2026.

                    EVANS, CRAVEN & LACKIE, P.S.

      By:    */s/ Markus W. Louvier*
             MARKUS W. LOUVIER, WSBA #39319
             STEPHANIE A. CROCKETT, WSBA #62797
             818 West Riverside, Suite 250
             Spokane, WA 99201
             Tel: (509) 455-5200; Fax: (509) 455-3632
             mlouvier@ecl-law.com
             scrockett@ecl-law.com

             WILLKIE FARR & GALLAGHER LLP

             CRAIG C. MARTIN (admitted *pro hac vice*)
             AMANDA S. AMERT (admitted *pro hac vice*)
             DEBRA BOGO-ERNST (admitted *pro hac vice*)
             MELANIE L. LEE (admitted *pro hac vice*)
             300 North LaSalle Dr.
             Chicago, IL 60654
             Tel: (312) 728-9000; Fax: (312) 728-9199
             cmartin@willkie.com
             aamert@willkie.com
             dernst@willkie.com
             mlee@willkie.com

             *Attorneys for Defendant*

REPLY TO PLF.-INTERVENOR'S
OPP. TO DEF.'S MOT. TO DISMISS



EVANS, CRAVEN
& LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; Fax (509) 455-3632

# CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2026, I caused a true and correct copy of the foregoing to be served on the following as indicated below:

Walter Smith, WSBA #46695
SMITH & DIETRICH LAW OFFICE, PLLC
1226 State Avenue, NE, Suite 205
Olympia, WA 98506
walter@smithdietrich.com
*Via ECF*

Lynn A. Toops
Natalie A. Lyons
Ian R. Bensberg
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
ltoops@cohenmalad.com
ibensberg@cohenmalad.com
*Via ECF*

J. Gerard Stranch, IV
Michael C. Tackeff
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
*Via ECF*

*Attorneys for Plaintiffs*

Samuel J. Strauss
Raina V. Borrelli
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
sam@straussborrelli.com
raina@straussborrelli.com
*Via ECF*

*Attorneys for Plaintiffs*

Robert Hyde, WSBA #33593
Ben Brysacz, WSBA #54683
Claire McNamara, WSBA #50097
Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
robert.hyde@atg.wa.gov
ben.brysacz@atg.wa.gov
claire.mcnamara@atg.wa.gov
*Via ECF*

*Attorneys for Plaintiff-Intervenor State of Washington*

By: */s/ Stephanie A. Crockett*
STEPHANIE A. CROCKETT, WSBA #62797
*Attorney for Defendant*